**In re Theodore R. MASCARI, Marie E. Mascari, Debtors.**

**Bankruptcy No. 86–00588.**

United States Bankruptcy Court, N.D. New York.

Feb. 9, 1987.

Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, N.Y., for Chase Manhattan

Bank, N.A.; John T. Sullivan, Jr., of counsel.

Wayne R. Bodow, Syracuse, N.Y., for debtors.

Warren V. Blasland, Syracuse, N.Y., trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

On September 17, 1986, a hearing was held on objections of the Chase Manhattan Bank, N.A. ("Bank") to confirmation of the proposed amended Chapter 13 plan advanced by Theodore R. and Marie E. Mascari ("Debtors"). This matter was thereafter submitted for decision, and the following constitute the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R.Bankr.P. 7052 (Fed.R.Civ.P. 52).

### FINDINGS OF FACT

The Debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101–151326, ("Code") on May 9, 1986. Debtors had previously received a discharge in a Chapter VII case in 1971. At the time of the entry of the Order for Relief, the Debtors owed the Bank $46,516.24; this debt was secured by a mortgage on Debtors' principal residence at 5916 Brownstone Path, Clay, New York. Prior to the filing, the Bank instituted a foreclosure action in state court on the indebtedness. The Bank's mortgage is the first on the real property. The testimony of Debtor places the value of the home at approximately $67,000.00.

Under the amended Chapter 13 plan submitted by the Debtors, they proposed to pay arrearages on the Bank's indebtedness "inside" the plan, while continuing regular monthly mortgage installments "outside" the plan.

Debtors' last payment on the mortgage was in September, 1984, with the Bank's foreclosure action commenced some time in October, 1985. Debtor testified the real estate taxes due on the real property are current, as they have been paid out of an escrow account maintained by the Bank. Debtors' last personal payment for insurance on the property was in November, 1982, and these payments are also presumably paid out of the escrow account.

Debtor Theodore R. Mascari stated that he was last employed in January, 1986 as a painter for the Carrier Corporation in Syracuse, New York. He currently receives $180.00 per week in unemployment compensation. Mr. Mascari now attends school full time, intending to graduate with an associate's degree in architecture. This would qualify him for a position as an architect's assistant. After he completes one year of schooling, Mr. Mascari will be eligible for a work study job which would afford some income. He intends to secure a student loan to cover expenses for the second year of his schooling. Mr. Mascari predicts he will secure employment upon successful completion of his education, referring to a 95% placement rate for previous program graduates. He testified that a starting salary for architect's assistants is between $15,000.00 and $18,000.00 per year.

Debtor Marie E. Mascari testified that she is currently the Benefits Manager at St. Joseph's Hospital in Syracuse, New York. She takes home approximately $646.00 every two weeks. Income tax is owed for 1985 in a total amount of approximately $780.00.

Debtors' two children, ages 16 and 13, attend school and reside with their parents. Mrs. Mascari stated that the family's budget makes no provision for children's clothing as the children work to pay their own expenses. The budget presented to the Court by Debtors is said to be neither over nor under stated, as Debtors have just enough income to cover their current expenses.

At the time of the hearing, Debtor's presented evidence that the real property was insured (Exhibit 7), with Mrs. Mascari

testifying that the Bank maintained the insurance premiums out of the escrow fund. Evidence concerning the Debtors' identity relevant to certain outstanding tax warrants, was also presented (Exhibit 6).

The Debtors had not made monthly payments on the mortgage indebtedness since the filing of their petition. Mrs. Mascari testified that the standing Chapter 13 Trustee informed her at the Code § 341 meeting that the monthly June payment was to be treated as an arrearage and provided for in the plan. Mrs. Mascari had tendered $603.51 to the Bank on or about July 18, 1986 as payment on the mortgage obligation. (Exhibit 4, Exhibit 8). Payment was tendered in the form of a personal check, and Mrs. Mascari stated that sufficient sums had been in the checking account to cover the amount. This payment was returned to Debtors' by the Bank (Exhibit 3). and Debtors thus made no further attempts at payment.

At the hearing, Debtors presented a certified check to Bank's counsel to cover payments for July and August, 1986, and also indicated a desire to make the September, 1986 mortgage payment with a personal check.

The Bank objects to plan confirmation on a number of grounds. Objection is made to treatment of the June, 1985 monthly payment as an arrearage. The Bank also contends interest at the parties' contract rate should be assessed on the mortgage arrearages paid under the plan. Additionally, the Bank has filed an amended proof of claim containing a demand for attorney fees and costs associated with the mortgage foreclosure action; such expenses are presumably authorized by the mortgage agreement of the parties. Further, the Bank argues that the plan improperly bifurcates mortgage payments as "within" and "outside" the plan. Finally, the Bank maintains that the Debtor's present financial condition renders the amended plan unfeasible. At the hearing, the Bank conceded that Debtors would need to make payments over five years in order for any plan to succeed.

For reasons unknown, Debtors' counsel has represented his clients' interests by conceding to nearly every objection raised by the Bank, except that for the addition of attorneys' fees and costs to the mortgage arrearages claim. Respecting this sole point of dispute, Debtors' counsel argues that a substantial portion of the Bank's fees and costs were unnecessarily incurred on points of contention which were conceded in the pre-trial stages of this matter. Debtors' counsel goes so far as to suggest that Bank counsels' actions in proceeding to an evidentiary hearing, after the former had entered so many concessions, constitute professional misconduct as a form of malicious prosecution and/or abuse of process.

## CONCLUSIONS OF LAW

Contrary to the assertions of Debtors' counsel, the Bank has done nothing more than assert its rights in a professional and capable manner. Its objections and arguments in connection with Debtors' amended plan can in no way be said to have been advanced in bad faith, or without some support in law or in fact.

Debtors' counsel has conceded his clients' responsibility for interest on the mortgage arrearages at the mortgage rate of interest. The law in the Second Circuit with respect to this issue is uncertain, there being no reported cases from a court of any level. The Bank relies upon *Cardinal Federal Savings & Loan Asso. v. Colegrove (In re Colegrove)*, 771 F.2d 119 (6th Cir.1985) for the proposition that such interest is a proper component of the Debtors' "cure" of the arrearages under the plan. In a more recent case, however, the United States Court of Appeals for the Eleventh Circuit *rejected* this position *in toto* unless the mortgage document itself specifically provided for such creditor relief. *Foster Mortgage Corp. v. Terry (In re Terry)*, 780 F.2d 894 (11th Cir.1986). To allow interest upon arrearages absent an appropriate contract provision was said to constitute a modification of the agreement in contravention of Code § 1322(b)(2). To a

certain extent, the analysis employed by the Eleventh Circuit followed that enunciated by Judge Celebrezze in his strong dissent in *Colegrove, supra,* and served to affirm two seminal bankruptcy court decisions on this issue. *In re Christian,* 35 B.R. 229 (Bankr.N.D.Ga.1983); *In re Carr,* 32 B.R. 343 (Bankr.N.D.Ga.1983).

The Court appreciates no strategic goal in Debtors' counsel's concession on this point. As indicated, there is a split of non-binding authority on this point, and counsel's acquiescence serves to add nearly $7,000.00 to the total Debtors would be expected to pay over the term of the amended plan. Even if the concession was made to reduce the Debtors' obligations for attorney's fees realistically expected to be associated with argument on this issue, the amount of the benefit which could have been possible had counsel seen fit to effectively research on the issue far outweighed any associated fees and costs. This concession alone serves to push Debtors' plan near the bursting point. Conceivably, the amended plan could still have been approved had the Bank not also objected to the proposed bifurcation of mortgage payments as both "inside" and "outside" the plan.

Initially, the Court notes there is little practical gain for the Bank to this objection, for debtors in this district have commonly sought to pay mortgage arrearages "inside" a plan, while making current monthly mortgage payments "outside" the plan, or directly to a creditor. This practice served as a means of reducing the trustee's fees. The Standing Chapter 13 Trustee has long acquiesced to such arrangements if the debtor is deemed capable of continuing to make the current monthly payments on his or her own. Thus, the Bank's objection in this regard has primary impact upon the fees to be received by the Trustee. Of course, these additional fees will increase the amount Debtors will need to contribute over the length of the plan.

Code § 1326(c) provides that the trustee is to make payments "under the Plan", unless the plan, or order confirming the plan, provides otherwise. While the Trustee is to be the primary disbursing agent for payments under the plan, *See,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 430, *reprinted in,* 1978 U.S.Code Cong. & Ad.News, 5963, 6386; S.Rep. No. 989, 95th Cong., 2d Sess. 142, *reprinted in,* 1978 U.S.Code Cong. & Ad.News 5787, 5928, the language of the section makes clear that in appropriate circumstances, some other entity or individual may serve as a disbursing agent. The debtor has often been recognized as eligible to assume this role. *Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 486–88 (5th Cir.1982); *Greenspan v. Davis (In re Glasper),* 28 B.R. 6, 8–9 (Bankr. 9th Cir.1983) (Hughes, B.J. concurring) *appeal dismissed,* 746 F.2d 1485, 1488 (1984); *In re Hankins,* 62 B.R. 831, 835 (Bankr.W.D. Va.1986); *In re Tartaglia,* 61 B.R. 439, 441 (Bankr.D.R.I.1986); *In re Case,* 11 B.R. 843, 846 (Bankr.D.Utah 1981); *In re Hines,* 7 B.R. 415, 420 (Bankr.D.S.D.1980); *In re Centineo,* 4 B.R. 654 (Bankr.D.Neb.1980). Yet the action of allowing the debtor to serve as disbursing agent does not serve to "split" the payments made, for bifurcation of payments is impermissible under Chapter 13. *In re Foster, supra,* 670 F.2d at 488; *In re Glasper, supra,* 28 B.R. at 8; *In re Tartaglia, supra* 61 B.R. at 441. Consequently, irrespective of the terminology employed by the parties or the plan itself, when any portion of any obligation on a secured claim is provided for under a Chapter 13 plan, payment thereon from whatever source subjects the payments to the Chapter 13 trustee's percentage fee.

Code § 1326 provides in relevant part:

(b) Before or at the time of each payment to creditors *under the plan,* there shall be paid—

. . . . .

(2) if a standing trustee appointed under section 1302(d) of this title is serving in the case, the percentage fee fixed for such standing trustee under section 1302(e) of this title. (emphasis added).

Code § 1302(e) provides in relevant part:

(1) A court that has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter shall set for such individual—

(a) a maximum annual compensation not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the General Schedule prescribed under section 5332 of title 5 and

(b) a percentage fee, not to exceed ten per cent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee *from all payments under plans* in the cases under this chapter for which such individual serves as standing trustee ... (emphasis added).

Irrespective of who is acting as disbursing agent, the language of these sections reveal that calculation of the trustee's percentage fee is to include payments made upon secured claims. While in some limited circumstances a secured claim may be truly "outside" a plan,[1] and thus, not subject to the trustee's fee, the more common result is that the Chapter 13 trustee is entitled to his percentage fee. *In re Foster, supra,* 670 F.2d at 491; *In re Glasper, supra,* 28 B.R. at 8 (Hughes, B.J. concurring); *In re Hankins, supra,* 62 B.R. at 835–36; *In re Tartaglia, supra,* 61 B.R. at 442–43; *In re Case, supra,* 11 B.R. at 846; *In re Hines, supra,* 7 B.R. at 421; *In re Centineo, supra.*

Thus, for purposes of Chapter 13 plans henceforth presented for confirmation by the trustee, the same shall not utilize the terms "inside" and "outside" the plan to describe whether it is the trustee or debtor who shall be making the payments. Rather, confirmation orders tendered for consideration shall indicate whether the trustee or a debtor is considered the disbursing agent for a particular debt.

Having determined the Chapter 13 trustee is entitled to collect a fee upon sums paid under a plan by a debtor as disbursing agent, the question becomes in what amount. Obviously, if the debtor acts as disbursing agent, the services of the Chapter 13 trustee are minimal and the maximum statutory fee is unwarranted. The Court has wide discretion in setting the Chapter 13 trustee's fee in any event. *In re Foster, supra,* 670 F.2d at 491; *In re Case, supra,* 11 B.R. at 874; *In re Eaton,* 1 B.R. 433 (Bankr.M.D.N.C.1979). The *Foster* court suggested a case by case analysis of the Chapter 13 trustee's fee was appropriate, *id.,* at 491, yet the Court believes a set, reduced percentage figure is more workable. Adoption of a presumed reduced percentage figure in all cases, subject to court review, will allow debtors to determine with greater exactitude the total of their payments under a plan, and thus their monthly obligations. A reduced figure will also serve to compensate the trustee for the added responsibility he should properly bear as the party primarily accountable for payments made by the debtor as disbursing agent. Even though the debtor may voluntarily request to act as disbursing agent for the trustee for payments made on current monthly obligations, it is the Chapter 13 trustee to whom the secured creditor should look for timely payment. *See, In re Case, supra,* 11 B.R. at 846–47. On the other hand, in the large number of cases, the Chapter 13 trustee's actual responsibilities respecting a debtor's current mortgage or other secured debt payments will be few. The Court presumes most debtors will timely submit current monthly payments to secured creditors just as they will timely make payments to the Chapter 13 trustee pursuant to the plan. In these circumstances, the Chapter 13 Trustee will have none of the costs and expenses associated with current payments that he has with payments on which he acts as disbursing agent.

---

1. *See In re Foster, supra,* 670 F.2d at 489 ("Where a fully secured mortgage claim is not treated under the provisions of § 1322(b)(5), or any other provision of Chapter 13, payments on that claim need not be made under the plan.").

Consequently, the Court believes the rate of 2%, as assessed upon sums paid by the debtor as disbursing agent will be paid to the Chapter 13 trustee as a fee, unless justification for alteration of the reduced fee is submitted by a party in interest.

With the above determinations in mind, it is apparent that the plan cannot be confirmed in its present form. Because the assessment of the trustee's fee upon payments made by a debtor as disbursing agent is a new phenomena in this District, the Court will allow the Debtors' 30 days in which to propose a new plan which takes into account such fees, as well as the interest on arrearages which have been conceded as due.

Furthermore, Bank's counsel is entitled to amend its arrearage claim to reflect additional attorneys' fees and costs in the amount of $2,284.00. Disbursements in the amount of $823.73 are also allowed. Duplicating and photocopy expenses in the amount of $279.30 are disallowed pursuant to Local Rule 8A. Adjustment of the claim to incorporate these amounts is conditioned upon Bank's counsel submitting a true and correct copy of the mortgage agreement and underlying note, to the Court. These documents presumably include "boiler plate" language authorizing such expenses should the Bank seek to assert its rights against a mortgagor. The allegations of Debtors' counsel with respect to the acts of the Bank's attorneys are unwarranted and unfounded, being totally devoid of merit. Further, the Bank's request for relief from the stay due to Debtors' alleged failure to make post-petition mortgage payments is rejected. The Debtors were ready and willing to tender sufficient sums at the time of the hearing. Further, the evidence reflects the Debtors received confusing and contradictory information from the Bank when they initially sought to continue monthly payments. With reference to the June mortgage payment, the uncontradicted testimony of Mrs. Mascari revealed the Chapter 13 Trustee's representations that such payment would be considered part of the arrearages under the amended plan.

Hence, any request for relief from the stay at this juncture would be inequitable, particularly in light of Debtors' opportunity to propose a modified plan.

As a result of the foregoing, it is

ORDERED:

1. The Bank is allowed to amend its claim for mortgage arrearages to reflect the amounts of $2,284.00 as attorneys' fees, and $823.73 as disbursements. Amendment is conditioned upon the Bank filing a true and correct copy of the mortgage agreement and underlying note with the Court within 10 days of the entry of this Order, and the appropriate authorizing language being contained therein.

2. Debtors are allowed 30 days in which to submit a modified plan. Any modified plan shall consider:

a. The Bank's right, pursuant to Debtors' concession, to interest at the rate of 13.5% per annum upon mortgage arrearages.

b. The Trustee's fee of 2% to be assessed upon payments to be made by Debtors as disbursing agent for the current monthly mortgage payments.