In re Al ANEIRO aka Alexander Aneiro, Debtor.

Paul RIDDLE and Clifford Crittendon, as Trustee of the Clifford Crittendon Trust, Movant,

v.

Al ANEIRO aka Alexander Aneiro and Harry W. Heid, Bankruptcy Trustee, Respondents.

Bankruptcy Nos. 85–00334–P13; RS–1986.

United States Bankruptcy Court, S.D. California.

April 15, 1987.

Douglas A. McGrew, Imperial Beach, Cal., for movant.

Robert D. Iafe, Herrmann, Potter & Taylor, San Diego, Cal., for respondents.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Paul Riddle and Clifford Crittendon, as trustees of the Clifford Crittendon Trust ("Riddle and Crittendon" or "Movants"), seek relief from stay to enforce a lease executed by Al Aneiro ("debtor") on January 1, 1986 ("1986 Lease"). Movants seek relief from stay to proceed in state court to secure possession of the leased property or, alternatively, adequate protection in the form of a court order requiring debtor to pay past due common area maintenance charges.

Debtor challenges the 1986 Lease as invalid because it was not executed in the ordinary course of his pizza parlor business and court approval was never obtained. Debtor argues that the parties remain bound by a lease executed September 14, 1984 ("1984 Lease"), which debtor properly assumed with court approval.

Movants counter that the 1986 Lease is valid, and even if it is not valid, the 1984 Lease must be deemed rejected under 11 U.S.C. § 365(d)(4).

## BACKGROUND

The 1984 Lease was executed by debtor and Calflor Grove, N.V., on September 14,

1984. Relevant terms of that lease include: (1) lease of Suites 401 and 402 of the shopping center; (2) rent of $1,452 per month; (3) term of five years, with a five-year option to extend; and (4) common area maintenance to be paid per invoices submitted by Calflor Grove.

On January 23, 1985, debtor filed a petition for relief under Chapter 13, Title 11 of the U.S.Code. Debtor's amended plan was confirmed August 19, 1985.

The 1986 Lease was executed by debtor and Paul Dolan, an agent for Calflor Grove, on January 1, 1986. That lease is identical in terms to the 1984 Lease with three significant exceptions: (1) lease of Suite 402 only; (2) rent of $700 per month; and (3) term of one year, to expire January 1, 1987.

During August 1986, Calflor Grove, N.V. sold the subject shopping center to movants. On October 17, 1986, Riddle and Crittendon moved for relief from stay pursuant to 11 U.S.C. § 362(d).

On January 15, 1987, this Court heard testimony concerning the circumstances surrounding the execution of the 1986 Lease. Debtor testified that during early December 1985, Paul Dolan ("Dolan"), acting as Calflor's agent, contacted him regarding past-due, post-petition common area maintenance charges. During that conversation, Aneiro asked to change the due dates of his payments, and inquired about the possibility of temporarily giving up one of the two suites he currently leased. Dolan informed Aneiro that both changes were possible. Aneiro then told Dolan that he would contact his attorney to obtain appropriate bankruptcy court approval before signing any papers. Dolan replied that he would save Aneiro some money by using Dolan's attorney to obtain the necessary court approval, and assured Aneiro he need not contact his own attorney.

Two weeks later, Dolan visited Aneiro's business premises and presented him with the 1986 Lease. Dolan explained its terms to Aneiro because Aneiro cannot write and has only a limited ability to read. Aneiro testified that his education does not exceed the third-grade level.

Aneiro understood the new lease to be identical in its terms to the 1984 Lease, except that it provided that Aneiro would temporarily lease only Suite 402. Dolan also told Aneiro that the monthly lease payment under the 1986 Lease would be the same amount as that paid by another tenant (China Garden) who rented the same amount of square footage in the shopping center. Aneiro believed that when he desired to take back Suite 401, he would be permitted to do so.

This Court finds Mr. Aneiro to be a sincere and credible witness. Additionally, his testimony is corroborated to a large extent by Kathy Hoot, Aneiro's employee, who overheard these conversations between Aneiro and Dolan.

Mr. Dolan's testimony presents a remarkably different view of the parties' lease negotiations. Dolan testified that he initially contacted Aneiro as the agent of lessor Calflor to collect over $2,000 in past-due rent. According to this version, during their conversations, Aneiro and Dolan worked out a mutual compromise to their problems—Aneiro would give up Suite 401 in exchange for Calflor's forgiveness of arrears under the 1984 Lease—to be accomplished by the execution of a one-year lease to commence January 1, 1986. Dolan further testified that Suite 401, given up by Aneiro in January 1986, has been leased to Pizza Hut for use as a non-retail pizza kitchen. Suite 401 is adjacent to Suite 402, where Aneiro operates his pizza parlor.

Although Aneiro testified that Dolan knew of his pending bankruptcy proceeding, Dolan claims that his first notice of any bankruptcy proceedings was during spring of 1986, some time after the 1986 Lease was executed. However, Dolan does not dispute the fact that Calflor, his principal, received notice of the debtor's filing. Since he knew nothing of the pending bankruptcy, Dolan denies having made representations to Aneiro about obtaining court approval of the lease.

However, agency law imputes Calflor's knowledge of the bankruptcy proceedings to Dolan:

As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other. *Cal.Civ.Code* § 2332.

*See also,* RESTATEMENT SECOND OF AGENCY §§ 268, 272, 275 (1958) and Appendix, Rep.Notes, pp. 441, 446, 454, 461, 471 and 475.

Calflor Grove, N.V. was listed on debtor's schedules as a creditor and has been served with all pertinent documents in this proceeding, including notice of debtor's proposed plan dated February 21, 1985.

After consideration of both versions of the 1986 Lease negotiations, this Court is not persuaded by Mr. Dolan's testimony and therefore gives it very little weight.

## ISSUES

I. Whether the September 14, 1984 lease was effectively assumed under 11 U.S.C. § 365.

II. Whether the January 1, 1986 lease is valid.

## DISCUSSION

## I. ASSUMPTION OF THE SEPTEMBER 14, 1984 LEASE

Debtor filed for relief on January 23, 1985, and proposed a plan on February 21, 1985, which provided for assumption of the 1984 Lease.

11 U.S.C. § 1322(b)(7) permits a debtor's Chapter 13 plan:

Subject to section 365 of this title, [to] provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

*See, also, In re Alexander,* 670 F.2d 885, 887 (9th Cir.1982); and *In re Zeller,* 38 B.R. 739, 740 (9th Cir. BAP 1984).

Lease assumption under § 1322(b)(7) is subject to § 365 of the Code. Section 365(d)(4) fixes the time within which an unexpired non-residential lease must be either assumed or rejected. 11 U.S.C. § 365(d)(4) provides, in pertinent part:

[I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidental real property to the lessor.

11 U.S.C. § 365(a) requires court approval for assumption or rejection of an unexpired lease. Bankruptcy Rules 9013 and 9014 require that a request for an order (other than relief requiring an adversary proceeding under Bankruptcy Rule 7001) shall be by motion. A motion is ·"made" when served on the opposing party. *In re Sonoma V,* 703 F.2d 429 (9th Cir.1983). Service is complete upon mailing. Bankruptcy Rule 9006(e).

On March 12, 1985, the Clerk of the Bankruptcy Court caused an Order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stay, to be served on all creditors, including Calflor Grove, N.V. Under the caption "Summary of Proposed Plan" that notice stated:

Debtor's Chapter 13 proposed plan for treatment of debts is on file at court and is a public record. Creditors must refer to the plan for precise details.... [U]nable to adequately summarize debtor's proposed plan. Each creditor is advised to contact the attorney for debtor and request a true copy of debtor's proposed plan to determine how the plan might affect each creditor.

 The provision in debtor's plan assuming the lease sufficiently satisfied the debtor's burden on lease assumption under Chapter 13. Section 365(d)(4) was clearly intended by Congress to protect lessors from delay and uncertainty surrounding assumption or rejection of non-residential leases and to decrease attendant vacancy problems by requiring prompt action by debtors who file for bankruptcy relief.

"Upon service of a motion to assume, this uncertainty is ended and therefore Congress' intention was fulfilled." *In re Victoria Station,* 69 B.R. 110, 111 (9th Cir. BAP 1986). Debtor here ended that uncertainty when he communicated his intent to assume the 1984 Lease in his February 21, 1985 plan.

■ Lessor, Calflor Grove, N.V., received notice of that plan's filing on March 12, 1985, 29 days after the debtor's petition was filed. Debtor's motion to assume the lease was "made" when served on Calflor. The liberal policies underlying Chapter 13 relief do not require a separate, formal motion to assume a lease where the debtor communicates an intent to assume pursuant to § 1332(b)(7) under the terms of a plan filed within the § 365(d)(4) time period.

■ Calflor Grove, N.V. did not object to the lease assumption by objecting to the plan's confirmation. However, the trustee and two secured creditors did object. Debtor's plan was amended July 12, 1985 (to provide for 100% payments) and was confirmed on August 19, 1985. Although assumption of a lease under § 365 requires the express approval of the court, *In re Harris Management Co., Inc.,* 791 F.2d 1412 at 1414–15 (9th Cir.1986), it is not necessary to obtain that court approval within the 60–day time limit of § 365(d)(4). *In re Treat Fitness Center, Inc.,* 60 B.R. 878, 880 (9th Cir. BAP 1986), *cited with approval In re By-Rite Distributing, Inc.,* 55 B.R. 740 (D.Utah 1985), which reversed *In re By-Rite Distributing, Inc.,* 47 B.R. 660 (Bankr.Utah 1985). Consequently, when the court confirmed the debtor's plan on August 19, 1985, the court approved the debtor's lease assumption as required by § 365(a).

■ Lease assumption is now *res judicata.* As stated by the Bankruptcy Appellate Panel in the case of *In re Evans,* 30 B.R. 530 (9th Cir. BAP 1983):

> Section 1327 is clear. The provisions of a confirmed plan bind each creditor whether or not such creditor has objected to, has accepted, or has rejected the plan.... An order confirming a Chapter 13 plan is *res judicata* as to all justicia-

ble issues which were or could have been decided at the confirmation hearing.

*See, also, In re Zimble,* 47 B.R. 639, 640 (Bankr.R.I.1985); *In re Pizzullo,* 33 B.R. 740, 742 (Bankr.Pa.1983); and *In re Risser,* 22 B.R. 868, 870 (Bankr.S.D.Cal.1982). Calflor Grove, N.V. and its successors in interest are bound by the Court's confirmation of that plan, which included approval of the lease assumption. *In re Evans, supra,* at 531.

## II. VALIDITY OF THE JANUARY 1, 1986 LEASE

Having determined that the 1984 Lease was validly assumed by the debtor, the Court must next address whether the debtor could modify or cancel that lease without court approval. Sections 1303 and 1304 allow a debtor who is engaged in business to exercise the rights and powers of a trustee under § 363 subject to the limitations imposed on a trustee under § 363(b) and (c). Section 363(b)(1) provides that a trustee may use, sell or lease property of the estate other than in the ordinary course of business only after notice and a hearing. Thus, if property of the estate exists postconfirmation, debtor must seek court approval to effect a modification of the lease, since such a transaction is not in the ordinary course of debtor's business.

■ Several courts have reached the conclusion that when the property of the estate revests in the debtor upon confirmation under § 1327(b), property of the estate no longer exists. *In re Hill,* 3 Bankr.L. Rep. (CCH) Para. 71610 (Bankr.C.D.Cal. 1986) (§ 1327(b) "prunes" the estate); *In re Walker,* 67 B.R. 811, 812, n. 3 (Bankr.C.D. Cal.1986) (automatic stay normally terminates upon confirmation of a Chapter 13 plan as to post-confirmation mortgage payments); *In re Dickey,* 64 B.R. 3, 4 (Bankr. E.D.Va.1985) (IRS levy on post-confirmation taxes owed was not limited to funds and property not committed to the plan); *In re Mason,* 51 B.R. 548, 549–50 (D.Ore. 1985) (estate terminated at confirmation of plan); *In re Stark,* 8 B.R. 233, 234 (Bankr. N.D.Ohio 1981) (no estate exists post-con-

firmation). These cases are premised upon the mistaken belief that revesting under § 1327(b) transforms property of the estate into property of the debtor.

Section 1306(a) defines property of the estate in a Chapter 13 case as follows:

"Property of the estate includes, in addition to the property specified in section 541 ... (1) all property ... that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7, 11, or 12 ... whichever occurs first; and (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted...."

Thus, the clear language of § 1306 demonstrates that *confirmation* of a Chapter 13 plan is not relevant to determining whether property is or is not property of the estate. The relevant events in this determination are commencement of the case and either dismissal, closing or conversion of the case. If Congress had intended for confirmation to so drastically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision.

The opinion of the Ninth Circuit Court of Appeals in *In re Nash*, 765 F.2d 1410 (9th Cir.1985), addressed the nature of post-confirmation property of the estate in a Chapter 13 case. In *Nash*, debtors filed a Chapter 13 plan, which included payment for the claim of a secured creditor, a credit union. Debtors' plan was confirmed and the Nashes were to make payments of $220 per month to the Chapter 13 trustee. The Nashes had difficulty making these payments on a timely basis, so the trustee brought a motion to have Mr. Nash's employer make the payment directly to the trustee, which the Court granted. Some two years later, the Nashes exercised their absolute right under § 1307(b) and dismissed their case. At the time of dismissal, the trustee held $907.14 collected pursuant to the court's wage deduction order, but not yet distributed to creditors. Upon filing his final report, the trustee distributed these monies to the credit union.

In defending an action by the debtors to recover the monies distributed by the trustee after dismissal of their case, the trustee argued that the debtors were bound by the terms of the confirmation order after dismissal and continued to be bound until the court discharged the trustee from performing his duties. The court rejected the trustee's argument and wrote:

The $907.14 received by the Trustee before dismissal *was the property of the estate because it was received after commencement of the case but before dismissal.* 11 U.S.C. Sec. 1306(a)(2). The $907.14 was submitted to the "supervision and control" of the Trustee. See 11 U.S.C. Sec. 1322(a)(1). However, ownership over all of the property of the estate, including the $907.14, vested in the Nashes once the plan was confirmed. 11 U.S.C. Sec. 1327(b). [emphasis added] At 1414.

The *Nash* opinion underscores that ownership of the property of the estate is revested in the debtor at confirmation and continues to exist post-confirmation until the case is closed, dismissed or converted, unless the plan provides otherwise.

The mere revesting of the property in the debtor upon Chapter 13 plan confirmation does not convert property of the estate into property of the debtor. Instead, the revested property remains property of the estate subject to the terms of the order of confirmation and all the protections of § 362(a). While the debtor may own and possess the property of the estate, he is not free for all purposes to do with it as he pleases. Section 1322(a)(1) provides for "supervision and control" by the trustee over monies and property committed to the plan. In addition, under the provisions of a confirmed plan, the debtor may remain the disbursing agent for the revested property of the estate. Section 1326(c). *In re Mascari*, 70 B.R. 325, 329 (Bankr.N.D.N.Y. 1987). *Foster v. Heitkamp*, 670 F.2d 478, 486–88 (5th Cir.1982). The ownership rights of the debtor in the property of the estate are limited at least to the extent that

**430**

the property is committed to successful performance under the plan. *In re Adams*, 12 B.R. 540, 542 (Bankr.D.Utah 1981).

This construction is supported by certain comments contained in the legislative history of 11 U.S.C. § 1227, recently enacted as the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986. In comparing §§ 1227 and 1327, the drafters wrote:

> The Conferees are concerned that farmers be able to obtain post confirmation credit. The Conferees are in agreement that current law allows Chapter 13 debtors to do so. Because section 1227 is modeled after section 1327, family farmers may provide in their plans for post-confirmation financing secured by assets that have revested in the debtor. The debtor may also use revested property to the extent it is not encumbered by the plan or order of confirmation to secure post-confirmation credit. (Conference Report 99–958, pp. 50, 51; also appearing in 132 Cong.Rec. H 8999 (Oct. 2, 1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5251, 5252.)

From the foregoing language, it is clear that Congress believes that under § 1327(b), upon confirmation there remains property of the estate which revests in the debtor encumbered by the order of confirmation.

Since the lease under which Aneiro possessed the premises was and at all times remained property of the estate, albeit revested in debtor upon confirmation of his plan, the lease could not be modified under § 363(b) without court approval. Accordingly, the purported "modification" of the lease in 1986 is invalid. Inasmuch as the motion for relief from stay is premised upon the validity of the 1986 Lease, the motion must be denied.

Debtor's counsel is directed to prepare an order in conformance with this decision within ten (10) days from the date of its entry.