### In re Stanley P. BRENSING and Dara Dee Brensing, Debtors.

No. 04–21464.

United States Bankruptcy Court, D. Kansas.

Jan. 24, 2006.

Cynthia F. Grimes, Grimes and Rebein, L.C., Lenexa, KS, for Debtors.

## *MEMORANDUM OPINION*[1]

ROBERT D. BERGER, Bankruptcy Judge.

This matter comes before the Court on the United States' Motion for Summary Judgment (Doc. # 30) regarding the debtors' objection to the proof of claim filed by the Internal Revenue Service ("IRS"). The debtors have responded to the motion (Doc. # 40).

### *Summary Judgment Standards*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. In articulating the standard of review for summary judgment motions, Rule 56 provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law.[2] In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment.[3] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and an issue "is 'material' if under the substantive law it is essential to the proper disposition of the claim."[4]

The familiar standard in the Tenth Circuit is that the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c).[5]

Accordingly, summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." If the nonmoving party fails to respond, the [bankruptcy court] may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate, for "[n]o defense to an insufficient showing is required."[6]

---

1. The United States appears by its attorney, Stephanie M. Page, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C. The debtors appear by their attorney, Cynthia F. Grimes of Grimes & Rebein, L.C., Lenexa, Kansas.

2. FED.R.CIV.P. 56(c); FED. R. BANKR.P. 7056.

3. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

4. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998).

5. *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir.2002) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

6. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation and emphasis omitted).

### Factual Background and Legal Opinion

The Brensings' first Chapter 13 bankruptcy was filed in the District of Kansas, Wichita Division, on August 6, 1996, as Case No. 96–12773–13. Their Chapter 13 plan was confirmed on October 18, 1996. The Brensings' monthly plan payment was $250.00. On December 13, 1999, the IRS assessed against the Brensings income taxes (and presumably associated interest and penalties) in the amount of $13,389 for the tax year 1997, which rendered the assessment a postpetition liability. The 1997 income tax liability, in addition to the prepetition tax liabilities paid under the plan, could not be paid within the 60–month limit set by § 1322(d). Much of the Brensings' prepetition IRS tax liability was paid upon the sale of their residence during the first Chapter 13 bankruptcy. However, there remained small prepetition tax liabilities following the sale of the residence and payment of the proceeds to the IRS.

The majority of the prepetition IRS tax liabilities that were paid in the first bankruptcy with the proceeds from the sale of the Brensings' home were payroll tax or trust fund priority claims under § 507(a)(8)(C). The 1997 postpetition income tax liability was a capital gain tax associated with the postpetition sale of the Brensings' home. The Brensings' initial motion to amend their plan in the first bankruptcy requested that the 1997 income tax liability be paid through their Chapter 13 bankruptcy case; this motion was later withdrawn after the IRS and the Chapter 13 trustee objected. Subsequent-ly on March 14, 2000, the IRS filed a § 1305 claim in the amount of $13,389 for the 1997 income tax liability.[7] The debtors did not object to this proof of claim. On October 25, 2000, the debtors filed a second motion to amend their plan and requested that the plan be modified to provide for the payment of the 1997 income tax liability[8] through their plan "with the full knowledge that there will be taxes due which will survive discharge." The IRS objected to this second motion to amend the Chapter 13 plan. Eventually, the Brensings and the IRS reached an agreement with regard to the payment of the IRS's 1997 income tax claim, and an order reflecting such was filed in the first bankruptcy on February 20, 2001. As far as the immediate proceedings are concerned, this agreed order provided:

> 3. [T]o the extent the debtors are ultimately granted a discharge under 11 U.S.C. Section 1328, they shall not be discharged from any liabilities owed to the Internal Revenue Service. The debtors expressly waive discharge with respect to the liabilities set forth in the Internal Revenue Service's claim, as well as any postpetition interest and penalties accruing on those liabilities...."

This language is an acknowledgment, and agreement incorporated into a binding court order, by the Brensings that it was not feasible for them to pay in full the pre– and postpetition priority and secured tax claims owed to the IRS through their first Chapter 13 bankruptcy. Under the above order, these outstanding federal tax liabili-

---

7. § 1305. **Filing and allowance of postpetition claims**

(a) A proof of claim may be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

8. The Court will refer to the principal and interest on the 1997 income tax return as the "1997 Income Tax Liability" and the associated penalties as the "1997 Penalties."

ties were not discharged when an order of discharge was entered in the first case on October 19, 2001.

The debtors' second and current Chapter 13 bankruptcy case was filed on April 13, 2004, less than three years after their first bankruptcy case was discharged. The IRS objected to confirmation of the debtors' plan. The proof of claim filed by the IRS in the current proceeding reflects secured claims of $4,390.10 (1992 and 1994 income tax interest), priority claims of $23,106.41 (includes 1997 Income Tax Liability of $19,656.00), and general unsecured claims of $15,460.79. The Brensings objected to the IRS proof of claim, asserting that the alleged IRS secured claims are not secured, that the 1997 Income Tax Liability (principal and interest of $19,656.00) is not a priority claim, and that the balance of the priority claim (1994 WT–FICA interest of $3,458.41) and unsecured claims (principal and interest on WT–FICA and FUTA) were discharged in the Brensings' prior bankruptcy.

▇ In the Response of Debtors to Motion of IRS for Summary Judgment,[9] the Brensings withdrew all of their objections to the IRS proof of claim except the facet of the objection pertinent to the 1997 Income Tax Liability. The debtors continue to assert that the 1997 Income Tax Liability is not entitled to priority status. Remaining for resolution, then, is the classification of the 1997 Income Tax Liability. As to any priority tax claims that are comprised of the principal and interest accrued to the petition date of the current bankruptcy, the debtors' Chapter 13 plan must provide for payment in full unless the IRS agrees to other treatment.[10]

▇ With regard to the 1997 Income Tax Liability, the IRS argues that the priority tax claim deadline set out in § 507(a)(8)(A)(i) was tolled during the Brensings' prior bankruptcy and, hence, the postpetition 1997 Income Tax Liability is entitled to priority classification.[11]

### 1997 Income Tax Liability

▇ In the Brensings' prior bankruptcy, the IRS filed pursuant to § 1305 a proof of claim reflecting the Brensings' 1997 Income Tax Liability. In order for a claim on account of postpetition tax liabilities to be provided for in a pending bankruptcy under § 1305, both the debtor and the creditor must acquiesce.[12] The debtor's consent is evidenced by providing in her plan for the treatment of postpetition claims, whether by a plan originally con-

9. Doc. # 40.

10. § 1322(a)(2).

11. It may be helpful to review the requirements that must be satisfied before federal income tax liabilities are entitled to priority status. With reference to the principal and interest for income tax liabilities, § 507(a)(8)(A) provides three independent bases for priority:

(i) Tax debts associated with required tax returns due within the three years prior to the date of the filing of the bankruptcy petition are priority claims ("Three–Year Rule").

(ii) Tax debts assessed within 240 days (as extended during the period in which an offer in compromise was pending plus 30 days) before the date of the filing of the bankruptcy petition are priority claims ("240–Day Rule").

(iii) If a tax is not assessed but remains assessable after a bankruptcy petition is filed, it is entitled to priority classification, unless the tax relates to either: (1) a non-filed tax return or a delinquent tax return filed within two years of the filing of the bankruptcy petition; or (2) it relates to a fraudulent return ("Unassessed Tax Rule").

12. HENRY J. SOMMER, ET AL., CONSUMER BANKRUPTCY LAW AND PRACTICE § 4.6 at 46 (7th ed.2004), and 8 COLLIER ON BANKRUPTCY ¶ 1305.02[2] at 1305–7 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

firmed by the court or by a plan modified pursuant to § 1329(a), and the creditor's assent is shown by the filing of a proof of claim by the creditor under § 1305(a).[13] Not only must the debtor provide for the postpetition debt in her schedules and in her plan, but if the postpetition creditor declines to file a proof of claim under § 1305, the postpetition claim will not be discharged.[14] It is a postpetition tax creditor's option whether it wishes to participate in a pending Chapter 13 bankruptcy because only the holder of the postpetition claim may file a claim under § 1305(a).[15] In effect, "an entity with a [postpetition] tax claim, therefore, is forced to file a postpetition claim or wait until the case is closed in order to be paid because of the interrelationship of 11 U.S.C. §§ 362, 1305, and 1306."[16] Since the Brensings specifically provided for inclusion of the 1997 liability in their prior bankruptcy and the IRS filed the § 1305 claim, a prerogative that rests with the IRS, the inclusion of the postpetition claim for the 1997 taxes was consensual.

■■■ If the debtor's plan does not provide for payment in full of a filed § 1305 claim, it is possible that the § 1305 claim may be discharged without full payment.[17] Here, however, the amended plan in the Brensings' first bankruptcy acknowledged that the § 1305(a) claim for the 1997 Income Tax Liability would not be paid in full and that to the extent it was not, the claim would not be discharged. The amended plan language and order control the legal effect of the Brensings' discharge in their prior case such that, even though the § 1305(a) tax claim was not paid in full, it was not discharged, irrespective of the general rule stated above.

■■■ For the reasons explained below, this Court concludes that on account of the 1997 Income Tax Liability, the Three–Year Rule under § 507(a)(8)(A)(i) was tolled during the pendency of the Brensings' prior bankruptcy because, despite the consensual nature of its § 1305(a) tax claim for the 1997 Income Tax Liability in the Brensings' prior bankruptcy, the IRS was stayed from collection on the liability.

■■■ Sections 362(a)(3) and (4) stay any act against property of the estate, even efforts to collect upon postpetition liabilities.[18] To the extent that the IRS may have sought collection on the postpetition liability, it could not have done so against property of the bankruptcy estate without obtaining relief from the automatic stay under § 362(d).[19] Section 541 defines what is property of the estate as of the commencement of the case, and this section is read in the broadest possible sense inclusive of all legal or equitable interests

---

**13.** 8 COLLIER ON BANKRUPTCY ¶ 1305.02[2] at 1305–7 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**14.** 4 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 302.1 at 302–11 (3d ed. 2000 & Supp. 2004).

**15.** 8 COLLIER ON BANKRUPTCY ¶ 1305.02[1] at 1305–4 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**16.** *See In re Woodall*, 81 B.R. 17 (Bankr. E.D.Ark.1987). The tax obligee could also

seek relief from the automatic stay pursuant to § 362(d) to pursue collection against property of the bankruptcy estate.

**17.** 8 COLLIER ON BANKRUPTCY ¶ 1305.04 at 1305–11 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**18.** 3 COLLIER ON BANKRUPTCY ¶ 362.03[3][c] at 362–17 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**19.** *Id.*

held by the debtor.[20] In a Chapter 13 bankruptcy, property of the estate is not confined to those interests owned by the debtor on the petition date. Section 1306(a) expands the definition of § 541 to include "property interests" acquired by the Chapter 13 debtor after commencement of the case, including the debtor's postpetition earnings.[21] Accordingly, § 1306(a) incorporates and expands upon the definition of "property of the estate" found in § 541 to include property acquired by the debtor during the Chapter 13 case.[22] Section 1306(a) operates after confirmation of the debtor's plan.[23] Section 1306(b) states that except as provided in the plan or confirmation order, the debtor shall remain in possession of property of the estate. Section 1327(b) and (c) provide that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor" and that this property so vesting "is free and clear of any claim or interest of any creditor provided for by the plan."

■■■■■ If neither the order of confirmation nor the debtor's confirmed plan addresses the vesting of prepetition prop-

erty of the estate, then the property of the estate revests in the debtor upon confirmation of the plan and remains property of the estate until discharge and closure of the bankruptcy proceedings. Section 1306(b) and section 1327(b) operate in tandem and direct that the debtor shall remain in possession of all of the property of the estate after confirmation of her plan. The only way for a debtor to avoid this result is to specify different treatment in her plan or in the order of confirmation. No such language appeared in the Brensings' first bankruptcy case and this Court concludes that the Brensings remained in *control of the property of the bankruptcy estate through discharge and closure of their prior Chapter 13 bankruptcy case. Logic is not strained to synchronize the language in § 1306 and 1327(b); these sections are employed in concert.* Section 1327(b) does not operate to remove property of the estate from the bankruptcy estate but merely places control of this estate property in the debtor pending conclusion of the Chapter 13 proceedings.[24]

We think that the opposing line of cases is "premised upon the mistaken belief that revesting under § 1327(b) transforms property of the estate into proper-

---

**20.** 5 COLLIER ON BANKRUPTCY ¶ 541.01 at 541–7 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005); § 1306.

**21.** § 1306. **Property of the estate**
    (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
        (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
        (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

    (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

**22.** 8 COLLIER ON BANKRUPTCY ¶ 1306.01 at 1306–2 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**23.** 8 COLLIER ON BANKRUPTCY ¶ 1306.01 at 1306–2 n. 2 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**24.** *Security Bank of Marshalltown, Iowa v. Neiman,* 1 F.3d 687 (8th Cir.1993); *see also* 8 COLLIER ON BANKRUPTCY ¶ 1327.03[2] at 1327–12.1 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

ty of the debtor." *In re Aneiro*, 72 B.R. 424, 428–29 (Bankr.S.D.Cal.1987). The *Aneiro* court further stated:

> the clear language of § 1306 demonstrates that confirmation of a Chapter 13 plan is not relevant to determining whether property is or is not property of the estate. The relevant events in this determination are commencement of the case and either dismissal, closing or conversion of the case. If Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision.

*Id.* at 429. We agree.[25]

If the Chapter 13 debtor is to leave the protective walls of bankruptcy and to expose assets to postpetition creditors and, in some circumstances, to prepetition creditors, then this should be a decision specifically stated in the plan or order of confirmation. To cast aside many of the benefits of the automatic stay upon confirmation of the debtor's Chapter 13 plan relegates, after confirmation, Chapter 13 proceedings to little more than court-sanctioned consumer credit counseling. This effect is an injustice to the debtor, who presumes that the protective umbrella of the bankruptcy will continue for at least the duration of her Chapter 13 plan. Automatic loss or serious negation of the automatic stay upon confirmation of a plan also harms prepetition creditors whose claims are paid through the bankruptcy since a debtor's resources may be diverted to matters other than compliance with her plan. Ultimately, such an interpretation may harm postpetition creditors for their

chances to collect against a debtor who does not successfully receive a discharge in Chapter 13 are reduced; these postpetition creditors will compete with prepetition creditors when seeking collection on the postpetition liability.

The plain reading of § 1327(b) is that confirmation of the plan vests all of the property of the estate in the debtor in combination with which the plain reading of § 1306(b) states that the debtor shall remain in possession of all property of the estate.[26] Nowhere in § 1327(b) does it state that property of the estate converts into property of the debtor upon confirmation and nowhere in this section does it state that § 1306 ceases to operate after confirmation of the plan. Section 1306 is most easily read to continue in effect after confirmation of the debtor's plan. If upon confirmation of the debtor's plan the property of the estate revests in the debtor and remains property of the estate, then such property remains subject to the terms of the confirmed plan and is entitled to all of the protections afforded under § 362(a).[27] To hold otherwise renders § 1306 virtually irrelevant.

*In re Talbot*, 124 F.3d 1201 (10th Cir. 1997), has been cited for the proposition that unless the plan or order of confirmation provide otherwise, upon confirmation of a debtor's Chapter 13 plan, property of the bankruptcy estate revests in the debtor as the debtor's property and not as property of the bankruptcy estate.[28] However, a careful reading of *Talbot* suggests otherwise:

> This court notes that contrary to the assertions of the IRS and the acquies-

---

25. *Neiman*, 1 F.3d at 691.

26. These provisions are subject to modification in the debtor's plan or order confirming plan.

27. *See Aneiro*, 72 B.R. at 429.

28. *See, e.g., In re Richardson*, 283 B.R. 783, 790 (Bankr.D.Kan.2002).

cence of the Trustee, it is not without question that the vesting provisions of § 1327(b) operate to grant absolute "ownership" of estate property to the debtor upon confirmation of a Chapter 13 plan. Nevertheless, because the Trustee does not contest the premise that § 1327(b)'s vesting provision operates to grant ownership rights, this court need not address the issue.[29]

■■■ What the court in *Talbot* did was to acknowledge the split of authority with regard to the vesting effect of § 1327(b), but found it unnecessary to rule on the issue. This Court, by its own research, has been unable to find any binding Tenth Circuit authority on the vesting effect of § 1327(b) and rejects the notion that § 1306(a) ceases to operate upon confirmation of a debtor's Chapter 13 plan.[30] A Chapter 13 debtor's post-confirmation bankruptcy estate consists of that property that exists on the petition date plus any additional property that is added postpetition by operation of § 1306(a). By remaining property of the bankruptcy estate, the debtor's property is protected from pre- and postpetition creditors alike, allowing the debtor an effective reorganization during the pendency of her case. This is the most harmonious interpretation and application of these sections. "It is an elementary rule of statutory construction that a statute is to be construed so that all the parts of the statute are harmonized with one another. A construction in which

one section eviscerates or contradicts another is not to be favored."[31]

As acknowledged in *Talbot*, courts have adopted differing interpretations of § 1327(b). For instance, in *In re Heath*,[32] the court interpreted the interplay between § 1306(a) and § 1327(b) to return to the debtor that property of the bankruptcy estate that is not necessary for completion of the debtor's plan.[33] However, neither Code section includes such a directive regarding the vesting of property and the status of property of the estate. Some courts have held that § 1327(b) empties the bankruptcy estate and revests the estate property in the debtor as the debtor's property and that § 1306(a) continuously replenishes the estate during the pendency of the case.[34] Other courts have found that upon confirmation of a debtor's Chapter 13 plan, the bankruptcy estate is terminated and all property of the estate, whether acquired pre- or postpetition, is held by the debtor as the debtor's property.[35] This Court rejects these alternate interpretations and agrees with the concerns stated by Judge Lundin in his treatise:

> But the broader issue is that *Heath* and *Telfair* signal that § 1327(b) works a very significant change in the relationship between the bankruptcy court and the Chapter 13 debtor at confirmation. The bankruptcy estate deflates, and the debtor loses many of the protections of the automatic stay. And in important ways, the Chapter 13 case disconnects

---

**29.** *In re Talbot*, 124 F.3d 1201, 1207 n. 5 (10th Cir.1997) (citations omitted).

**30.** *Richardson*, 283 B.R. at 802. This Court respectfully disagrees with Judge Flannagan's conclusions to the contrary.

**31.** *Matter of Gordon*, 217 B.R. 973, 976 (Bankr.S.D.Ga.1997).

**32.** 198 B.R. 298 (S.D.Ind.1996), *aff'd*, 115 F.3d 521 (7th Cir.1997).

**33.** *See Heath*, 115 F.3d at 524.

**34.** *In re Fisher*, 203 B.R. 958 (N.D.Ill.1997).

**35.** 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 230.1 at 230–4 n. 20 (3d ed. 2000 & Supp. 2004).

from bankruptcy court jurisdiction with respect to property and the debtor's dealing with creditors after confirmation. These are scary outcomes for debtors who thought that their financial futures were safely protected by the stay and within the supervision of the bankruptcy court for the life of the Chapter 13 case.[36]

A Chapter 13 debtor's ability to augment, dispose of and use property of the estate supports the notion that the property vests in the debtor as property of the estate upon confirmation. The Code imparts to a debtor, exclusive of the Chapter 13 trustee, certain rights and powers of a trustee under § 363, generally applying to the use, sale, or lease of property.[37] Although the authority is split, there is also support for the notion that the debtor in a Chapter 13 bankruptcy proceeding may enjoy the trustee avoiding powers set out in Chapter 5 of the Code,[38] although limitations or conditions may be imposed upon the debtor's exercise of this right. Some courts reject the notion that a Chapter 13 debtor can ever exercise trustee avoiding powers except as provided under § 522;[39] however, whether the trustee alone or in concert with the debtor exercises the Chapter 5 powers, whatever is recovered is for the benefit of the estate.[40]

A Chapter 13 debtor may "retain control of causes of action that are property of the estate" and does not lose control of non-exempt property to the trustee.[41] The legislative history equates the trustee powers imparted to a Chapter 11 debtor-in-possession in § 1107 to those powers held by a debtor in a Chapter 13 case.[42] The Chapter 13 debtor enjoys the right to assume or reject executory contracts and unexpired leases, a uniquely trustee power.[43] It makes little sense to allow a Chapter 13 debtor to sell property of the bankruptcy estate free and clear of liens or to employ other powers for a few months, only to have the bankruptcy estate and these rights terminate upon confirmation of the plan for the three—to five-year duration of a Chapter 13 case.

In *In re Young*, the Supreme Court concluded that for the period during which a taxpayer is in a pending bankruptcy case, the running of a time limitation to determine the priority and/or dischargeability of income taxes under §§ 507(a)(8) and 523(a)(1) is equitably tolled as to prepetition liabilities so long as the automatic stay prevents an action to collect the tax.[44] *Young* did not deal specifically with the tolling of these deadlines for postpetition tax liabilities. However, the doctrine of equitable tolling set out in *In re Young*

**36.** 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 230.1 at 230–20 to 230–21 (3d ed. 2000 & Supp.2004).

**37.** §§ 1303 and 1304.

**38.** 1 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 6–2 at 501–02 (West Publishing Co.1992).

**39.** *Hansen v. Green Tree Servicing, LLC, (In re Hansen)*, 332 B.R. 8 (10th Cir. BAP 2005).

**40.** *Straight v. First Interstate Bank of Commerce (In re Straight)*, 200 B.R. 923 (Bankr. D.Wyo.1996). Of course, the debtor may employ or benefit from the use of trustee avoidance powers as provided in § 522(g) and (h).

**41.** 8 COLLIER ON BANKRUPTCY ¶ 1306.03 at 1306–7 to 1306–8 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005).

**42.** 8 COLLIER ON BANKRUPTCY ¶ 1303.04 at 1303–9 and 1303–10 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005) quoting from H.R.Rep. No. 595, 95th Cong. 1st Sess. 326 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6282–83.

**43.** § 1322(b)(7).

**44.** *Young v. United States*, 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002).

should apply to the 1997 Income Tax Liability owed by the Brensings because during the first bankruptcy the IRS was prohibited from seeking collection on the Brensings' postpetition 1997 Income Tax Liability absent relief from the automatic stay.[45] During the pendency of the Brensings' first Chapter 13 bankruptcy case, the IRS was stayed under § 362(a)(3) and (4) from collecting on the 1997 Income Tax Liability. In addition, the Brensings continued to hold property of the estate under § 1306 and 1327(b). The IRS did not obtain relief from the automatic stay during the first case to collect the 1997 Income Tax Liability. As a result, the Three–Year Rule was tolled as to the 1997 Income Tax Liability until a discharge order was entered in the Brensings' first bankruptcy case on October 19, 2001.

The Brensings argue that under *Young* equitable tolling must be determined on a case-by-case basis and that there is no *per se* rule that requires such tolling. This Court rejects the Brensings' argument. The court's holding in *Young* is quite succinct: "We conclude that the lookback period of 11 U.S.C. § 507(a)(8)(A)(i) is tolled during the pendency of a prior bankruptcy petition." [46] This Court is unable to glean, and the debtors do not cite, specific language in the *Young* decision to require such a case-by-case analysis and, even if this Court were so compelled, it would find

that equitable tolling is appropriate in the Brensings' bankruptcy case. The Brensings' post-confirmation amendment to their plan in their first bankruptcy specifically contemplated that the IRS tax liabilities would not be paid in full. This is a situation in which the IRS agreed to a "lesser payment plan" wherein it accepted whatever payments it could receive from the debtors during the pendency of their first Chapter 13 bankruptcy and forewent collection on the postpetition liability during the first bankruptcy.[47] The Brensings' "lesser payment plan" triggered equitable tolling for the 1997 Income Tax Liability because the IRS was stayed from the collection of postpetition tax liabilities.

In summary, the Three–Year Rule under § 507(a)(8)(A)(i) for the postpetition 1997 Income Tax Liability was tolled during the pendency of the Brensings' prior Chapter 13 bankruptcy through October 19, 2001,[48] the date on which the first case was discharged. The IRS was stayed from collecting on the postpetition liability absent relief from the automatic stay pursuant to § 362(d).[49] Since the Brensings' new bankruptcy was filed less than three years after the discharge date in the first bankruptcy, the principal tax due on the 1997 Income Tax Liability in the amount of $12,789, plus the interest due on such tax in the amount of $6,867, is entitled to unsecured priority status under the

---

**45.** *See, e.g., In re Woodall,* 81 B.R. 17 (Bankr. E.D.Ark.1987); *In re Pagnac,* 228 B.R. 219, 222 (8th Cir. BAP 1998); *In re Occhipinti,* 1997 WL 837627 (Bankr.M.D.Fla.1997); *In re Bair,* 240 B.R. 247 (Bankr.W.D.Tex.1999). Although these cases were issued prior to *Young,* they stand for the general proposition that tolling applies to both pre-and postpetition taxes during the pendency of a Chapter 13 bankruptcy.

**46.** *Young,* 535 U.S. at 54, 122 S.Ct. 1036.

**47.** Although not relevant to this Court's legal conclusion, this Court wishes to encourage, where appropriate, "lesser payment plans" between a taxpayer and the IRS when such plans are the best result that may be achieved.

**48.** The date the discharge order was docketed in the prior case.

**49.** 8 COLLIER ON BANKRUPTCY ¶ 1305.02 at 1305–3 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005), and *In re Fowler,* 394 F.3d 1208, 1214 (9th Cir.2005).

Three–Year Rule.[50]

### *Conclusion*

The United States' motion for summary judgment is granted. The debtors do not raise legal or factual issues with regard to the balances set out in the IRS's proof of claim. The IRS's proof of claim is allowed as filed and the debtors' objection thereto is overruled in its entirety.

---

**50.** The balances are determined as of the petition date of the Brensings' second bankruptcy. The Court notes that the penalties associated with the 1997 income tax liability were properly classified in this case by the IRS as general unsecured claims. *See In re Cassidy,* 983 F.2d 161 (10th Cir.1992); *In re Coleman,* 26 B.R. 825 (Bankr.D.Kan.1983); and *In re Bates,* 974 F.2d 1234 (10th Cir.1992).