**In the Matter of Mickey McClain KILLOUGH, Debtor.**

**COMMERCIAL CREDIT CORPORATION,**
Appellant,

v.

**Mickey McClain KILLOUGH, Appellee.**

No. 89–4626
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 4, 1990.

Kenneth Michael Wright, Lake Charles, La., for appellant.

Gerald J. Casey, Morris & Casey, Lake Charles, La., for Killough.

Keith A. Rodriguez, Lafayette, La., Trustee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellee, Mickey McClain Killough (Killough), filed a petition for bankruptcy under Chapter 13. After a hearing, her Chapter 13 plan, providing for the partial repayment of her creditors, was approved over the objection of the defendant-appellant, Commercial Credit Corporation (Commercial Credit). Commercial Credit appealed the bankruptcy court's determination, and the district court affirmed the judgment of the bankruptcy court. Commercial Credit now appeals to this court, and we affirm the district court's judgment.

## I. Facts and Procedural Background

Killough, a registered nurse at St. Patrick Hospital, filed a petition for relief under Chapter 13 of the Bankruptcy Code. Originally, on November 30, 1988, Killough proposed a Chapter 13 plan wherein she would pay $301 per month toward her debts for 60 months. Subsequently, Commercial Credit filed two proofs of claim: one for $3000, the other for $5389.91. On January 31, 1989, Killough filed an amended plan, which provided that the security for the $3000 claim—a 1982 Oldsmobile Delta Royale—would be valued at $3000 and returned to satisfy the creditor's secured claim. The amendments also reduced the duration of Killough's plan from 60 months to 48 months. The monthly payment under the plan, however, remained at $301.

According to Killough's plan, she had an estimated future monthly income (net of taxes) of $1695.32 and fixed expenses of $1394.32 per month[1] for herself and her son. However, such monthly income estimate does not include any overtime payments to be received by her.[2] Testimony at the confirmation hearing showed that the option of working overtime had frequently been available to Killough and that she had availed herself of it.

On February 17, 1989, a confirmation hearing for Killough's plan was held. Evidence of Killough's income in 1988 and 1989 was presented and Killough testified about her expenses and income. At the confirmation hearing, Commercial Credit objected to Killough's plan because, among other reasons, of its failure to reflect money to be earned by Killough for overtime.

1. Killough's Chapter 13 statement listed the following expenses:

| EXPENSE | AMOUNT |
|---|---|
| 1. Mortgage Payment | $262.07 |
| 2. Utilities | $164.68 |
| 3. Food | $225.00 |
| 4. Clothing | $ 25.00 |
| 5. Laundry and/or cleaning | $ 30.00 |
| 6. Medical and Drug expenses | $ 95.00 |
| 7. Insurance | |
|    a. Auto | $207.66 |
|    b. Home Owners | $ 32.00 |
|    c. Professional Liability | $ 5.58 |
| 8. Transportation (excluding automobile note payments) | $100.00 |
| 9. Club or Union dues | $ 5.00 |
| 10. Cable Television | $ 27.00 |
| 11. Delta School of Business (Tuition) | $115.33 |
| 12. Continuing Education—R.N. | $100.00 |
| TOTAL | $1,394.32 |

2. Killough testified at the confirmation hearing that as of July 1988, her base rate of pay was $12.69 per hour. Overtime pay is calculated off of this base rate.

Commercial Credit argues that such income—because of the regularity with which it had been earned in the past—should redound to the benefit of creditors. The bankruptcy court concluded that, as Killough admitted, the expenses in the plan were understated, but the bankruptcy court found *no evidence of bad faith* on the part of Killough. Hence, in a ruling from the bench, the bankruptcy court commented that it would not require Killough "to endanger her health and her mental well being by working overtime to satisfy the unsecured creditors." Moreover, the bankruptcy court noted that such overtime was not always available to Killough. For these reasons, the bankruptcy court confirmed Killough's amended plan and overruled Commercial Credit's objection.

Commercial Credit appealed the plan confirmation to the district court, claiming, *inter alia*, that the bankruptcy court erred in confirming the plan in light of the failure of the plan to include money to be earned by working overtime. After hearing argument on July 19, 1989, the district court affirmed the judgment of the bankruptcy court. The district court stated that insufficient evidence existed to support "Appellant's claim that the Bankruptcy Court's opinion was clearly erroneous." The district court pointed to the paucity of evidence indicating bad faith on the part of Killough. In addition, the district court highlighted the bankruptcy court's conclusion that overtime hours might not be available to Killough in the future and, thus, it would be "unfair" to require the Killough's Chapter 13 plan to encompass possible future overtime earnings.

Commercial Credit appeals, and we affirm the judgment of the district court.

## II. Standard of Review

██ We review the findings of the bankruptcy court just as we would findings from a trial in the district court. *See, e.g., In re Commercial W. Finance Corp.*, 761 F.2d 1329, 1333 (9th Cir.1985) ("Because we

are in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision."). Hence, we will not overturn findings of fact unless they are clearly erroneous, *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir.1989), but we review issues of law *de novo, In re Compton*, 891 F.2d 1180, 1183 (5th Cir. 1990).

In the case *sub judice*, we review issues relating to the approval of a Chapter 13 plan. As we find that the instant case turns on factual findings by the bankruptcy court, our review is under the clearly erroneous standard. Thus, if "we are not left with the definite and firm conviction that a mistake has been committed[,]" we will not reverse. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1164 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988).

## III. Discussion

Commercial Credit appeals the judgment below on two related grounds:

1. Whether the bankruptcy and district courts committed error by not requiring Killough, who (in Commercial Credit's view) had a history of both pre- and post-petition overtime income, to place all, or a portion of, her post-petition overtime income into her plan for the repayment of her creditors.

2. Whether the bankruptcy and district courts committed error by finding that Killough had satisfied her burden of proving that all of her disposable income would be paid into the plan in accordance with 11 U.S.C. § 1325(b)(1).[3]

We read Commercial Credit's brief to assert, in essence, that the amounts Killough receives in overtime compensation should be included in her payments under her Chapter 13 plan because she works some overtime with regularity and such income constitutes income over and above the expenses listed in her plan.[4] To assess

---

**3.** Our conclusions on the first of these issues, discussed *infra*, renders this claim moot.

**4.** We note that under the aegis of its overtime argument, Commercial Credit also makes arguments concerning the following: (1) whether

the merit in this contention, we turn to section 1325 of the Bankruptcy Code, which controls the confirmation of Chapter 13 plans. 11 U.S.C. § 1325. In particular, the pertinent portion of section 1325(b)(1), which sets the standards for confirming plans in situations like the one at hand—where an unsecured creditor objects to the confirmation—states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> .  .  .  .  .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B); *see generally* E. Warren & J. Westbrook, *The Law of Debtors and Creditors* 309–10 (1986).

Following the dictates of the relevant statutory language, in confirming the plan over Commercial Credit's objection, the bankruptcy court was called upon to determine whether Killough's plan met the requirements of section 1325(b)(1)(B). That is, the bankruptcy court had to find that her proposal devoted her entire "projected disposable income" for the three years following her first payment toward her plan. The bankruptcy court must take two steps in relation to this process. Initially, it must project the income of the debtor "over the next three years." *Collier on Bankruptcy* ¶ 1325.08[4][a] (15th ed. 1985). For practical purposes, this task is usually accomplished by multiplying the debtor's monthly income by 36. Next, the bankruptcy court must assess the amount of the debtor's income that is "disposable." *See generally id.*

The budget filed by Killough envisioned her making less per year than she did in 1988 [5] and, indeed, less each month than she has usually made since she filed her Chapter 13 statement.[6] These facts make Commercial Credit's arguments for including overtime income in the Chapter 13 plan facially appealing. After all, at the confirmation hearing, both Killough and her attorney admitted to some inaccuracy in the budget. However, Commercial Credit's ar-

the paycheck accepted as representative of Killough's earnings by the bankruptcy court constitutes an appropriate example of her biweekly earnings and (2) the fact that Killough testified that if she received an income tax refund, she would use it for house repairs. While both of these points relate to the assessment of Killough's disposable income, neither addresses the issue of whether overtime should be included in Killough's plan—Commercial Credit's stated contention. Moreover, the latter assertion, relating to a possible tax refund, is entirely hypothetical and, we believe, irrelevant to the present case. With regard to the former assertion, we acknowledge that the paycheck that the bankruptcy court explicitly called "most typical in that it does not have any overtime [,]" included 40 hours of sick pay. Sick pay does not include any allowance for "shift differential" (Killough, who works evenings and nights, re-ceives an additional $2.50 per hour during evening shifts and $3.50 per hour during night shifts). Since Killough testified at the confirmation hearing that she has never worked the day shift, a paycheck for the same time period, reflecting no overtime and her usual shifts (night and evening) would be a bit higher. However, we do not find the difference dispositive in the instant case. Moreover, we fail to see how this finding by the bankruptcy court adds to the issue raised by Commercial Credit on appeal—the inclusion of overtime in Chapter 13 plans.

5. Killough's 1988 W–2 listed her total income for the year as $46,363.15.

6. At the confirmation hearing, the following data relating to Killough's paychecks was presented:

| CHECK NO. | PAY PERIOD | GROSS INCOME | NET PAY |
|---|---|---|---|
| 20171588 | 12/18/88–12/31/88 | $2,118.09 | $1,449.76 |
| 20172515 | 01/01/89–01/14/89 | $1,498.00 | $1,003.25 |
| 20173491 | 01/15/89–01/28/89 | $1,266.04 | $ 860.62 |
| 20174530 | 01/29/89–02/11/89 | $1,770.21 | $1,170.63 |

gument ignores two key findings by the bankruptcy court.

■ First, although Killough has worked significant amounts of overtime at some points in the past and testimony by Ron McKeever—an Administrative Assistant at St. Patrick Hospital—indicated that such overtime was frequently available for registered nurses, the bankruptcy court accepted testimony by Killough that overtime might not always be available to her. In addition, the bankruptcy court noted that Killough's health might not withstand her working as much overtime as she had in the past. Specifically, the bankruptcy court made the following oral finding:

[R]ight now [Killough's] saying, not only ... would [overtime] perhaps jeopardize her health, but ... also that the work is not available; they're sending people, the work is not available for her to have.

Thus, while cases exist where overtime has been included as projected income for Chapter 13 purposes,[7] in this case, the bankruptcy court appears to have determined that the potential for Killough to work overtime in the future was not definite enough to follow this route.[8] Given Killough's testimony on this point and our perusal of the record, we hold that such determination was not clearly erroneous. *See Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th Cir.1987)

(court evaluated the bankruptcy court's determination of a debtor's projected income under the clearly erroneous standard).

■ Second, besides being unwilling to include Killough's overtime income as projected income, to the extent that Killough's overtime income raised her overall income above that anticipated by her plan, the bankruptcy court implicitly found that such income was not "disposable." Section 1325(b)(2)(A) defines disposable income for a debtor not engaged in business as follows:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor....

11 U.S.C. § 1325(b)(2)(A).

The bankruptcy court apparently viewed overtime payments received by Killough as reasonably necessary for the maintenance of Killough and her son.[9] To this end, the bankruptcy court made the following statements:

I think, if anything, [Killough's] budget is understated. I think her budget is inaccurate by her own admission, but I—I see—I have heard absolutely nothing here this morning, that indicates that the debtor's plan is filed in bad faith. In

---

**7.** *See, e.g., In re Kazzaz,* 62 B.R. 308, 315 (Bankr. E.D.Va.1986) (in determining that the debtors' Chapter 13 plan was proposed in good faith, the bankruptcy court noted that the debtor-wife "must work overtime to make the minimum payments needed to fund the plan for a 16 percent payment to unsecured creditors."); *Cf. In re Smith,* 43 B.R. 319, 321 (Bankr.E.D.N.C. 1984) (in considering whether debtors' plan was feasible, the court noted debtor-husband's net monthly pay, including overtime).

**8.** Though overtime was not at issue, *In re Schyma* presents an arguably analogous situation. 68 B.R. 52 (Bankr.D.Minn.1985). In *Schyma,* a creditor objected to the debtors' plan because it felt that the debtors failed to include all of their projected disposable income in their plan. *Id.* at 63. At issue, *inter alia,* were dividends received by the debtor-husband from a cooperative creamery. Addressing these dividends, the bankruptcy court found that "the prospect of dividends from the Ramey Cooperative Cream-

ery is not so certain as to require Debtors or the Court to consider them as regular or disposable income." *Id.* Like the creamery dividends at issue in *Schyma,* the possibility of overtime pay in the instant case is not a prospect of the certitude necessary to warrant inclusion in Killough's Chapter 13 plan.

**9.** Findings of fact are involved in reaching this conclusion. *See e.g., In re Easley,* 72 B.R. 948, 949 (Bankr.M.D.Tenn.1987) (determining what constitutes "reasonably necessary" involves "fact questions which must by determined in the context of individual debtors and their dependents."); *cf. In re Chaffin,* 836 F.2d 215, 216 (5th Cir.1988) (In a *sua sponte* reconsideration of its earlier decision, the *Chaffin* court remanded the case to the bankruptcy court for a determination of whether the case involved bad faith; it specifically directed the bankruptcy court to consider whether the proposed plan committed all of the debtor's projected disposable income for the duration of the plan.).

the Court's view she's struggling to make due.... I think she's making a sincere effort, I think the objection is ill founded and the objection is overruled and the court will order the plan confirmed as amended.

After considering the entire record, including Killough's testimony about how she uses the money she earns [10] and the fact that she has not yet been able to put aside the $100 per month budgeted in her plan for her own continuing education, we cannot conclude that the bankruptcy court's judgment was clearly erroneous.

## IV.

For the foregoing reasons, we affirm the judgment of the district court, which upheld the judgment of the bankruptcy court. In so holding, we recognize that there may be instances where income obtained through working overtime can and should appropriately be included in a debtor's projected and disposable income for the purposes of a Chapter 13 plan. This is not such a case.

AFFIRMED.

---

**10.** We note that Killough herself stated that her food budget was very understated. Also, Killough testified that her payments to the Delta School of Business (tuition for her son) are approximately $489.44 each month, rather than the $115.33 anticipated in her plan. Killough explained the discrepancy as the result of her inability to obtain a tuition loan (due to her bankruptcy filing) that she had anticipated at the time she made out her Chapter 13 plan.