**In re John Marceau RICHARDSON and Dorothy Evelyn Richardson, Debtors.**

No. 97–21561–13.

United States Bankruptcy Court, D. Kansas.

Oct. 8, 2002.

Eric C. Rajala, Overland Park, KS, for Debtors.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

John and Dorothy Richardson filed their Chapter 13 petition on June 6, 1997.

---

1. Debtors John Marceau Richardson and Dorothy Evelyn Richardson appear by their attorney, Eric C. Rajala, Overland Park, Kansas. The Chapter 13 Standing Trustee, William H. Griffin, appears by his attorney, Cynthia F. Grimes of Grimes & Rebein, L.C., Lenexa, Kansas.

Their plan was confirmed on October 10, 1997. Ten months later, and fourteen months after their case was filed, their adult son died, leaving them $400,000 as beneficiaries of his life insurance policy. The Richardsons claimed the insurance proceeds exempt under 11 U.S.C. § 522(b), which provides that "an individual debtor may exempt *from property of the estate* property listed in . . . this subsection." (Emphasis added.) No one objected to the exemption.

Are the insurance proceeds *property of the estate* that can be exempted under § 522(b)? The court answers in the negative. Although no one objected to the exemption, before property can be exempted from property of the estate, it must first be property of the estate. As this opinion will explain, these insurance proceeds were never property of the estate, thus they cannot be exempted from it. The result is that the insurance proceeds are outside the estate and not within reach of the trustee for payment through the plan.

When the Richardsons completed their plan payments, they moved for a discharge.[2] The Chapter 13 Standing Trustee, William H. Griffin, objected. Among other things, he maintained that the insurance proceeds were disposable income that should be paid through the plan.[3]

Are the insurance proceeds disposable income that should be paid through the plan? The court rules that the insurance proceeds are not disposable income payable through the plan because they are not

the debtors' projected disposable income nor property devoted to the plan. Therefore, the trustee's objection lacks merit and does not bar a discharge. And all this notwithstanding, the Chapter 13 trustee has no statutory authority to recover the insurance proceeds from the debtors.

## I. Motion for Partial Summary Judgment

These questions are before the court because the Richardsons filed a motion for partial summary judgment in response to the trustee's objection to discharge. The summary judgment motion seeks a ruling that the insurance proceeds are exempt.[4]

In the trustee's objection to discharge, he also complained that following confirmation, the Richardsons misrepresented their income and expenses and acted in bad faith.[5] The Richardsons did not address this aspect of his objection in their motion for partial summary judgment, however. Therefore, this aspect of the trustee's objection is not before the court.

This proceeding is core under 28 U.S.C. § 157. The court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

## II. Undisputed Facts

The summary judgment motion contains the requisite statement of uncontroverted material facts, to which the trustee has responded. The relevant, undisputed facts are:

The Richardsons filed their Chapter 13 petition on June 6, 1997.[6] Their plan pro-

---

2. Debtors' Motion for Discharge filed August 30, 2000 (Doc. # 47).

3. Trustee's Objection to Motion for Discharge filed September 8, 2000 (Doc. # 50), para. 7 at 3–4.

4. Debtors' Motion for Partial Summary Judgment filed April 3, 2001 (Doc. # 75).

5. Trustee's Objection to Motion for Discharge filed September 8, 2000 (Doc. # 50), para. 4 at 2.

6. "Plaintiff's Statement of Uncontroverted Material Facts" in Debtors' Memorandum in Support of Motion for Partial Summary Judg-

posed to pay the trustee $64,800 over 36 months at $1,800 per month. They began making the plan payments on July 10, 1997, and on October 10 of that year, the court confirmed their plan.

On August 14, 1998, approximately 14 months after the petition filing date and 10 months after the confirmation date, the Richardsons' adult son, John C. "Chris" Richardson, died from injuries suffered in an automobile accident.[7] In due course, the Richardsons received the benefits of a life insurance policy on his life in the amount of $400,000.

The following documents attached to the memorandum in support of the motion for partial summary judgment and referred to in the statement of uncontroverted facts support these events: (1) a letter to the trustee from the Richardsons' attorney dated May 31, 2000; (2) a U.S. Financial Beneficiary's Statement and Payment Direction form; (3) a State of Colorado death certificate; and (4) a funeral notice.[8]

On May 8, 2000, the Richardsons filed Supplemental Schedules B and C,[9] listing the insurance proceeds and claiming them exempt under Kansas Statutes Annotated § 40–414 in the following terms: "Life Insurance Death Benefit Proceeds Paid on Death of Chris Richardson" having a fair market value of $400,000.

The trustee did not object to the Richardsons' claim of exemption.[10]

In August 2000, the Richardsons filed a motion for discharge. In their motion for discharge, the Richardsons maintained that they had completed the payments according to the plan terms. The trustee filed a timely objection to the their motion, alleging (in part) that the insurance proceeds should be deemed disposable income and made available for payment of claims under the plan.

## III. Discussion

### A. The Debtors' Exemption Contention

The only contention in the Richardsons' brief on summary judgment is that the insurance proceeds are exempt property. There is no dispute that the trustee failed to object to the exemption claim. Nor does the trustee deny that he received notice of the supplemental schedules claiming the exemption or that he failed to object to the exemption. The Richardsons therefore point to the rule announced by the United States Supreme Court in *Taylor v. Freeland & Kronz.*[11] *Taylor* holds that failure to object to an exemption of property from the estate within the allowed time validates the exemption claim. Consequently, the Richardsons argue that the trustee's failure to object renders the exemption valid.[12]

---

ment filed April 3, 2001 (Doc. # 76), para. 1 at 3.

7. "Plaintiff's Statement of Uncontroverted Material Facts" in Debtors' Memorandum in Support of Motion for Partial Summary Judgment filed April 3, 2001 (Doc. # 76), para. 3 at 4.

8. Exhibit 1 attached to Debtors' Memorandum in Support of Motion for Partial Summary Judgment filed April 3, 2001 (Doc. # 76).

9. Debtors' Supplemental Schedule B–Personal Property and Schedule C–Property Claimed as Exempt filed May 8, 2000 (Doc. # 40).

10. "Plaintiff's Statement of Uncontroverted Material Facts" in Debtors' Memorandum in Support of Motion for Partial Summary Judgment filed April 3, 2001 (Doc. # 76), para. 4 at 4.

11. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

12. *Kwiecinski v. Community First Nat'l Bank of Powell (In re Kwiecinski),* 245 B.R. 672 (10th Cir. BAP 2000).

Furthermore, they argue that even if the *Taylor* rule were not applicable, Kansas law allows them the exemption. Kansas, like most states, has opted to apply its own exemption statutes in bankruptcy cases, as § 522(b) permits. The specific Kansas exemption statute applicable to life insurance is K.S.A. § 40–414. And it does grant the Richardsons an exemption for life insurance proceeds.[13]

Unfortunately, neither party has addressed the express condition of § 522(b) requiring that before property can be exempted from the estate, it must be in the estate: "[A]n individual debtor may exempt *from property of the estate* the property listed in either paragraph (1) or ... paragraph (2) of this subsection." (Emphasis added.) The court's research discloses that the interplay between two Code sections, § 1306(a)(1) and § 1327(b), forces the conclusion that the insurance proceeds are not property of the estate subject to exemption.

## B. The Relevant Code Sections

### 1. Section 1306(a)

Section 1306(a) addresses property of the estate in a Chapter 13 case. Subsection (a)(1) includes within the estate all *property* that the debtor acquires from the commencement of the case until the case is closed, dismissed, or converted. Subsection (a)(2) includes *earnings* from the debtor's services performed before the case is closed, dismissed, or converted:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—

> (1) *all property* of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; *and*

> (2) *earnings* from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.[14]

Obviously, § 1306(a)(1) can be read to include the insurance proceeds within the Chapter 13 estate. The insurance proceeds are, after all, property the Richardsons acquired while the case was *not closed, dismissed, or converted.* Under this reading of § 1306(a)(1), the insurance proceeds would be property of the estate, and both the Kansas statute and the *Taylor v. Freeland & Kronz* decision would exempt them from the estate.

### 2. Section 1327(b)

But, another Code section influences the meaning of § 1306(a) and the scope of property of the estate in a Chapter 13 case. Section 1327(b) "vests all of the property of the estate in the debtor" upon confirmation:

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the *property of the estate* in the debtor.[15]

Numerous courts have given consideration to this Code section in relation to § 1306(a)(1) and to the way the two sec-

13. *See* K.S.A. § 40–414; *Osment v. Trout (In re Trout's Estate),* 156 Kan. 120, 123, 131 P.2d 640 (1942); *see also In re Douglas,* 59 B.R. 836, 837 (Bankr.D.Kan.1986); *In re Chadwick,* 113 B.R. 540, 545 (Bankr.W.D.Mo. 1990).

14. 11 U.S.C. § 1306(a)(1) & (2) (emphasis added).

15. 11 U.S.C. § 1327(b) (emphasis added).

tions interact to determine the scope of a Chapter 13 estate.

## C. The Tenth Circuit Bankruptcy Court Cases

Within the Tenth Circuit, several bankruptcy courts have opined on the interrelationship of §§ 1306(a)(1) and 1327(b). The first such decision, *In re Adams*,[16] emphasizes that Chapter 13 does not prevent certain creditors from reaching property of the debtor. In this 1981 decision, the Hon. Ralph R. Mabey, a Utah bankruptcy judge, held that the automatic stay did not bar the collection of nondischargeable alimony and child support from property that was vested in the debtor by confirmation of the Chapter 13 plan.

Before filing for Chapter 13 relief, Mr. Adams had incurred an alimony and child support obligation in a divorce. After Adams's Chapter 13 plan was confirmed, his ex-spouse initiated state court proceedings to collect past due alimony and child support. In response, Adams sought a show cause order against her in the bankruptcy case for violating the automatic stay.

Under § 362(b)(2)(B), the automatic stay does not stay "the collection of alimony, maintenance, or support from property that is *not property of the estate*."[17] Therefore, the question confronting the court was, in Judge Mabey's words, "[W]hat property, if any, was not property of the Chapter 13 estate and, therefore, was available for satisfaction of this nondischargeable debt"?[18]

Judge Mabey noted that taken together, § 1306(a) and § 541(a) prescribe that virtually no property remains as *property of the debtor* in a Chapter 13 from the date of filing until confirmation of the plan. But upon confirmation, the property of the estate changes because § 1322(b)(9) permits the plan to vest property of the estate in the debtor,[19] and § 1327(b) dictates that confirmation vests all property of the estate in the debtor unless the plan or order confirming the plan provide otherwise. Furthermore, under § 1327(c), property vesting in the debtor under subsection (b) is free and clear of any claim or interest of any creditor provided for by the plan, unless the plan or the order confirming the plan provide otherwise.

Thus, Judge Mabey said, "[T]he expansive definition of '*property of the estate*' found in Section 1306 is pruned dramatically at confirmation."[20] Upon confirmation, property that has not been designated in the plan or order confirming the plan as necessary for the execution of the plan vests in the debtor and becomes property of the debtor. Wages over and above those paid to the trustee or creditors under a plan and any property that the debtor does not propose to use in funding the plan return to the debtor and become subject to the reach of an ex-spouse under § 362(b) because the stay does not apply.

There are four bankruptcy court decisions from states within the Tenth Circuit that have followed the *In re Adams* analysis of § 1306(a)(1) and § 1327(b)—one from Utah,[21] two from

---

**16.** *In re Adams,* 12 B.R. 540 (Bankr.D.Utah 1981).

**17.** § 362(b)(2)(B) (emphasis added).

**18.** *In re Adams,* 12 B.R. 540, 541 (Bankr. D.Utah 1981).

**19.** "[T]he plan may—... (9) provide for the vesting of property of the estate, on confirma-

tion of the plan or at a later time, in the debtor or in any other entity...."

**20.** *In re Adams,* 12 B.R. 540, 542 (Bankr. D.Utah 1981) (emphasis added).

**21.** *In re Johnson,* 36 B.R. 958 (Bankr.D.Utah 1983) (holding that the Office of Recovery Services of the Utah Dept. of Social Services

Colorado,[22] and one from Kansas.[23] Two other Colorado bankruptcy cases have acknowledged the validity of the analysis while deciding on other grounds.[24]

### D. The Tenth Circuit Court of Appeals Decision

In 1997, the Tenth Circuit Court of Appeals itself considered the vesting issue in *United States v. Richman (In re Talbot).*[25] In this case, the IRS held a lien on the debtor's residence securing a claim to be paid through the plan. Following confirmation, the residence was sold, but to clear the title, the debtor was forced to pay off the IRS lien.

When the trustee learned of the pay off, she sought an order of disgorgement against the IRS, arguing that the residence was part of the bankruptcy estate and that the automatic stay barred collection from its sale proceeds. The bankruptcy court ordered disgorgement. On appeal, the Tenth Circuit reversed, holding that under § 1327(b), confirmation of the Chapter 13 plan vested the residence in the debtor, removing it from property of the estate and allowing the IRS to collect its lien from the sale proceeds.

### E. The Eleventh Circuit Court of Appeals Decision

More recently, the Eleventh Circuit also adopted this view in *Telfair v. First Union Mortgage Corp.,* a 2000 decision authored by Senior Circuit Judge Phyllis A. Kravitch.[26]

First Union Mortgage Corporation was an oversecured creditor.[27] Its mortgage documents entitled it to expenses and attorneys' fees incurred in protecting the secured property, whether from default, foreclosure, or litigation. The Telfair plan cured existing mortgage arrearages with payments through the plan. But it paid the regular monthly mortgage payments directly to the mortgagee outside the plan.

Following confirmation, Telfair defaulted several times on the regular monthly mortgage payments due the mortgagee outside the plan. As a result, First Union filed several motions for stay relief to recoup the defaulted payments, incurring attorneys' fees in the process. Furthermore, Telfair failed to maintain insurance on the property. This required First Union to "force place" insurance on the property at a high premium cost.

To recover the fees and costs, First Union deducted them from Telfair's mort-

---

was free to collect its postpetition debt for child support from a tax refund that was not dedicated to the plan and therefore vested in the debtors upon confirmation).

**22.** *In re Root,* 61 B.R. 984 (Bankr.D.Colo. 1986) (holding that confirmation vests in the debtor property of the estate not dedicated to the plan); *In re Thompson,* 142 B.R. 961 (Bankr.D.Colo.1992) (vesting property of the estate in the debtor upon confirmation).

**23.** *In re Gyulafia,* 65 B.R. 913 (Bankr.D.Kan. 1986) (holding confirmation vested property in the debtor and therefore property of the estate was not liable for post-confirmation taxes incurred by debtor).

**24.** *McCray v. McCray (In re McCray),* 62 B.R. 11 (Bankr.D.Colo.1986) (acknowledging that

confirmation of the plan vests property of the estate in the debtor, but since the plan had not yet been confirmed, the automatic stay barred proceeding against the property of the estate); *Providian Nat'l Bank v. Vitt (In re Vitt),* 250 B.R. 711 (Bankr.D.Colo.2000) (acknowledging that confirmation vests property of the estate in the debtor but interpreting plan to require surrender).

**25.** *United States v. Richman (In re Talbot),* 124 F.3d 1201 (10th Cir.1997).

**26.** *Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333 (11th Cir.2000).

**27.** 11 U.S.C. § 506(b).

gage escrow account. This caused Telfair to initiate an adversary action against First Union on several theories, one of which was stay violation. But the bankruptcy court dismissed the adversary on First Union's motion for summary judgment, and the district court affirmed.

On appeal, the Eleventh Circuit Court of Appeals also affirmed. In considering the appeal, Judge Kravitch recognized three models that courts have followed in resolving the conflict between §§ 1306 and 1327:(1) *the estate termination approach,* under which "all property of the estate becomes property of the debtor upon confirmation and ceases to be property of the estate"; (2) *the estate preservation approach,* under which "all property of the estate remains property of the estate after confirmation until discharge, dismissal, or conversion"; and (3) *the estate transformation approach,* under which "only that property necessary for the execution of the plan [remains] property of the estate after confirmation."[28]

Adopting the third model, Judge Kravitch quoted Chief Judge Posner of the Seventh Circuit in *Black v. United States Postal Service (In re Heath)*[29] in reading "the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."[30] Judge Kravitch thus held that confirmation of Telfair's plan had removed the mortgage payments from the estate, allowing First Union to collect the attorneys' fees and costs by charging the debtor's account without violating the automatic stay.

Finally, Judge Kravitch announced that the "estate transformation approach ... should be the law of this circuit."[31]

In the *Heath* case, cited by Judge Kravitch in support of the *estate transformation approach,* Chief Judge Posner made a convincing argument against the *estate preservation approach.* He pointed out that it creates a jurisdictional nightmare for the bankruptcy courts. Under that approach, all property of the Chapter 13 estate remains in the estate after confirmation until discharge, dismissal, or conversion. Judge Posner pointed out, however, that under that approach, any disputes arising during the plan term that were arguably related to property of the estate would confer jurisdiction on the bankruptcy court and embroil it in even the pettiest of controversies.

### F. The Eleventh Circuit Bankruptcy Court Decision

Taking to heart Judge Kravitch's endorsement of the estate transformation approach, a bankruptcy judge within the Eleventh Circuit, the Hon. Benjamin Cohen of Alabama, has amplified *Telfair* in a comprehensive and illuminating decision entitled *EconoLube N' Tune, Inc. v. Frausto (In re Frausto).*[32]

As he was bound to do, Judge Cohen adopted the estate transformation approach, but went on to expound on the theory of Chapter 13 and to comprehensively catalogue (in a footnote) numerous

---

28. *Telfair,* 216 F.3d at 1340.

29. *Black v. United States Postal Service (In re Heath),* 115 F.3d 521, 524 (7th Cir.1997).

30. *Telfair,* 216 F.3d at 1340, quoting *In re Heath,* 115 F.3d at 524.

31. *Telfair,* 216 F.3d at 1340.

32. *EconoLube N' Tune, Inc. v. Frausto (In re Frausto),* 259 B.R. 201 (Bankr.N.D.Ala.2000).

cases employing the different vesting models explained by Judge Kravitch.

The facts of the *Frausto* case are straightforward. Frausto filed for Chapter 13 relief in September 1996 and obtained confirmation of his plan in November of that year. Approximately 18 months after confirmation, he became a franchisee of EconoLube N' Tune, Inc. When Frausto breached the franchise agreement, EconoLube N' Tune brought an adversary complaint against him in bankruptcy court and obtained a default judgment of $94,438.09.

Before Frausto filed his bankruptcy petition, he had sued Subway Restaurants, Inc., and others, in Alabama state court for a monetary recovery. When he filed his bankruptcy petition, the trustee purported to succeed to his state court cause of action. At about the same time that Econo-Lube N' Tune obtained its default judgment against Frausto, the trustee settled the state court action against Subway for $100,000, and the bankruptcy court approved the settlement. The settlement money was paid to the trustee, who placed the funds in an interest-bearing account.

Seeing these funds in the hands of the trustee, EconoLube N' Tune issued a writ of garnishment against the trustee to collect its $94,438.09 judgment out of the $100,000 settlement proceeds.

Judge Cohen ruled that property of the estate as defined in §§ 541 and 1306 " 'vests ... in the debtor' ... 'free and clear* of any claim or interest of any creditor provided for in the plan' (section 1327(c)) (emphasis added) upon confirmation." [33] He therefore held that the $100,000 in the possession of the trustee was not property of the bankruptcy estate, but was instead property of the debtor subject to EconoLube N' Tune's garnishment.

Summarizing his view, Judge Cohen announced that the Chapter 13 scheme contemplates the payment of the debtor's pre-petition creditors from future earnings in lieu of from property owned at filing or acquired thereafter:

> This statutory scheme is simple and unambiguous. It provides for the payment of claims out of future earnings, in lieu of payment from property which a debtor either owns when filing bankruptcy or acquires afterwards. As a result, at confirmation all such property vests in the debtor. At that time, the debtor's pre-petition creditors lose their claims to, or interest in, that property, whether the property was acquired by the debtor before or after filing bankruptcy. And after confirmation, they are bound to accept the periodic payments provided for under the terms of the debtor's confirmed plan in full satisfaction of their claims.[34]

Expanding on this theme, Judge Cohen explained that Chapter 13 does not authorize collection, liquidation, and distribution of property. Rather, Chapter 7 is the vehicle for collecting, liquidating and distributing a debtor's assets. Chapter 7 does not contemplate the debtor retaining any property of the estate, except exempt property and property acquired after the debtor has filed the case. In short, Chapter 7 involves a debtor who will sacrifice property. Therefore, a Chapter 7 trustee is authorized by § 704(1) to "collect and reduce to money the property of the estate for which such trustee serves...." [35]

**33.** *Frausto,* 259 B.R. at 211 (emphasis in original).

**34.** *Id.* at 207.

**35.** 11 U.S.C. § 704(1).

This is not the case with Chapter 13. Chapter 13 involves a debtor who will retain property. Consequently, "a Chapter 13 trustee, unlike a Chapter 7 trustee, has no statutory obligation, right, duty or power to sell, use, lease, collect, liquidate or distribute any property, whether that property is denominated 'property of the estate' or 'property of the debtor.' "[36] Section 1302(b)(1) deletes from the duties of a Chapter 13 trustee the responsibility "to collect and reduce to money the property of the estate" that § 704(1) delegates to Chapter 7 trustees. And a Chapter 13 trustee has no access to § 726(a), "which either permits or directs the distribution of 'property of the estate' or which specifies how 'property of the estate shall be distributed' "[37] Rather, the Chapter 13 trustee is directed by § 1302(b)(3) merely "to dispose of . . . moneys received or to be received in a case. . . ."[38]

These limitations are inherent in the theory and purpose of Chapter 13. A Chapter 13 filing is a voluntary process into which no one can force the debtor. No involuntary petition under this chapter can be filed against the debtor. And once the debtor files a Chapter 13 case, no one can force a liquidation of the debtor's assets, except by requesting and obtaining conversion of the case to Chapter 7 under the conditions expressed in § 1307(c).

The debtor retains possession of the property that remains in a Chapter 13 estate after confirmation—the future earnings and income necessary to fulfill the plan—until the debtor pays those monies to the trustee: "The Chapter 13 debtor, rather than the trustee, is specifically endowed, pursuant to section 1303, with the authority, 'exclusive of the trustee,' to use, sell or lease property of the estate. 11 U.S.C. § 1303 (emphasis added). Section 1306(b) mandates that 'the debtor *shall* remain in possession of *all property of the estate.*' 11 U.S.C. § 1303 (emphasis added)."[39] In Frausto's case, according to the plan, the estate after confirmation consisted of $270,000, his projected future earnings of $4,500 per month times 60 months.

## G. The Confirmation Order

The question remains, given the rationale of these cases, whether the plan or confirmation order in this case affect the vesting of property under § 1327(b). As the prior discussion indicates, § 1327(b) provides for the vesting of property of the estate in the debtor upon confirmation, "[e]xcept as otherwise provided in the plan or in the order confirming the plan. . . ."

■ This exception in § 1327(b) permits a plan to embrace non-income property of the estate that would otherwise vest in the debtor at confirmation. As to income, debtors' plans must "provide for the submission of . . . future *income* of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. . . ."[40] But the statute does not require debtors to submit non-income property to the plan. Debtors may, however, voluntarily submit non-income property to the plan, and when they do, the exception to § 1327(b) prevents that property from vesting in them at confirmation, and it remains in the post-confirmation estate. But, unless a plan states otherwise, confirmation vests in debtors all property not devoted to the plan.

---

36. *Frausto,* 259 B.R. at 211.

37. *Id.*

38. 11 U.S.C. § 1302(b)(3).

39. *Frausto,* 259 B.R. at 211 (emphasis in original).

40. § 1322(a)(1) (emphasis added).

In addition to allowing the plan to alter vesting under § 1327(b), the exception in § 1327(b) also allows the confirmation order to do the same. The addition of the confirmation order as a means of negating vesting under § 1327(b) merely recognizes a common procedure for amending plans in restructuring cases. The procedure allows the court to permit modification of a plan without requiring the debtor to file an amended plan. For example, a debtor's initial plan might fail to meet the best-interest-of-creditors test for confirmation unless the debtor volunteers to add non-income property to the plan. If a debtor wishes to offer the additional property, a motion to modify the plan can be filed, appropriate notice given, and the plan amendment approved by the court with directions to memorialize the ruling in the confirmation order. By allowing the amendment to be expressed in the confirmation order, the debtor is saved from filing an amended plan and confirmation can be completed with dispatch.

In this division of the Kansas bankruptcy court, a confirmation order is the final result of the following process: A Chapter 13 plan is filed. An objection to confirmation, if any, is presented in written form and is brought before the court for hearing on a monthly docket day. After any objection is resolved by ruling or agreement, the trustee advises the court as to whether the plan satisfies the prerequisites to confirmation required by the Code, and if so, the judge finds in open court that the plan is confirmed.

Sometime after the hearing, the trustee submits to the Bankruptcy Clerk a form confirmation order for filing. In most cases, as in this one, the form confirmation order bears the trustee's facsimile stamped signature of approval, but no approval signature by debtor's counsel. The Clerk stamps the order with a facsimile of the judge's signature. The judge does not personally sign the confirmation order. In fact, the judge does not see the order unless some issue is later raised about its contents. This procedure has evolved to accommodate the voluminous number of confirmation orders processed in this division and it is the procedure by which the confirmation order in this case was entered and filed.

Unless the court directs at the confirmation hearing that a specific ruling should be memorialized in the confirmation order, the only information necessary for inclusion in the confirmation order is a statement mirroring Form 15 of the Official Bankruptcy Forms.[41] That form, adaptable from Chapter 11 cases to Chapter 13 cases, presents a brief three-line statement that (1) the plan [as modified, if applicable] was filed on a certain date; (2) the court determined after hearing on notice that the requirements for confirmation set forth in the statute were satisfied, and (3) the plan is confirmed.

■ In this case, the trustee's form confirmation order, filed three weeks after the confirmation hearing, contains additional information. It contains a paragraph numbered 8, itself consisting of two sentences that appear to change both the terms of plan payments and the timing of vesting under § 1327(b).

All property of the estate, including any income earnings or other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the plan *shall revest in the debtor(s);* provided no property received by the Trustee for purposes of

---

**41.** Official Bankruptcy Form 15, Order Confirming Plan.

distribution under the plan shall revest in the debtor except to the extent such property may be in excess of the amount needed *to pay in full all allowed claims as provided by the plan.*

Such property as may revest in the debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account.[42]

The first clause of the first sentence addresses vesting and is consistent with § 1327(b). The second clause is inconsistent with § 1327(b); it alters the treatment of claims contemplated by the plan by adding the phrase *"to pay in full all allowed claims as provided by the plan."* (Emphasis added.) The plan in this case did not purport to pay all allowed claims 100%. It merely proposed to pay $1,800 per month for 36 months, a total of $64,800! The second sentence, set off from the first, is likewise inconsistent with § 1327(b); it changes the vesting date from the date of confirmation to the date the court approves the Trustee's Final Report and Account.

In this case, the issue addressed in paragraph 8 was not presented to the court at the hearing conducted to obtain confirmation of the plan. Debtors' counsel was not given notice and an opportunity for hearing on the issues raised by the language of the paragraph. The confirmation order does not bear the approval signature of debtors' counsel. It is merely a form order filed by the trustee approximately three weeks after the court announced that the plan was confirmed.

No one filed a pleading asking the court to rule on whether the vesting time under § 1327(b) should be delayed or whether the amount paid on allowed claims should be expanded. And the court did not direct that paragraph 8's language be included in

the confirmation order. Rather, the addition of this paragraph to the confirmation order was made without this judge's specific knowledge or approval.

Proper procedure would require a motion to bring the issue before the judge, appropriate notice to interested parties, a ruling by the judge, approval of the court's order by debtors' counsel and others, and the judge's signature on the confirmation order. But the confirmation order in this case is not the product of such a procedure.

Furthermore, the confirmation order language conflicts with the purpose of § 1327(b), which is to allow for expression of the property that will remain in the estate for distribution by the plan. The addition of paragraph 8 to the order fails to accomplish this purpose. Rather, it alters the plan payment terms and changes the time of vesting without a specific ruling to that effect by the court. Congress did not intend the exception language in § 1327(b) to permit either of these alterations without a judge's formal ruling.

Having now looked closely at this language in the context of § 1327(b), and having now gained a better understanding of the theory of Chapter 13 exhibited in the cases discussed above, the court believes that inserting this language in the confirmation order denied the debtors due process of law. For this reason, although the order contains language purporting to delay the vesting time beyond confirmation, the court finds that the § 1327(b) exception language in this case should not permit the trustee to increase plan payments on claims nor should it prevent property from vesting in the debtors upon confirmation. Paragraph 8 is inappropriate and is hereby stricken from the confir-

**42.** Order Confirming Plan filed October 10, 1997 (Doc. # 19) at 2.

mation order *nunc pro tunc* and given no effect.

The trustee has cited a Kansas bankruptcy appeal that applies language identical to the paragraph under discussion here. The case, *In re Hoffmeister*,[43] holds that that language altered the vesting time of § 1327(b). Nevertheless, this court declines to follow that case because the propriety of the paragraph language was not at issue before the district judge and because this court disagrees with the opinion in other respects.

In *Hoffmeister*, when the debtors filed their Chapter 13 petition in January 1993, they claimed their automobile exempt, and no one objected. The vehicle was encumbered by the security interest of Super Chief Credit Union securing a debt of $8,000. The automobile value was $2,600 on the filing date. The plan provided for payment of both the secured claim and the unsecured claim through the trustee. When the court confirmed the plan in April of 1993, the debtors commenced plan payments to creditors, including Super Chief.

Later, the car suffered hail damaged and the hail insurance company tendered a $1,101.36 check payable jointly to Super Chief and the debtors. The debtors then moved the court to determine the distribution of the insurance proceeds. They claimed that Super Chief's remaining $338.56 secured claim should be paid from the insurance funds and the balance paid to them. Super Chief argued that the balance of the check should be paid to unsecured creditors, of which it was one.

The bankruptcy court heard the debtors' motion in April 1995. Debtors' counsel argued that the hail insurance check was

paid for damages to exempt property; therefore, the check proceeds were exempt. In response, "the bankruptcy court opined that the proceeds were exempt only if the debtor intended to use them towards the repair of the exempt car; otherwise, the balance of the proceeds should be paid to the estate for distribution."[44] The court then allowed the debtors five days to file a memorandum of authorities supporting their position.

In the debtors' supplemental brief, they cited the Kansas exemption law and two federal court decisions as support for their claim that the exemption vested in them and that the insurance proceeds did not remain property of the estate. They argued that the insurance proceeds were the product of the exempt car and therefore belonged to them, subject to the credit union's remaining lien.

On May 22, 1995, the bankruptcy judge ruled from the bench that since the insurance policy was property of the estate and the debtors did not intend to use the funds to repair the car, the insurance proceeds were estate property that must be paid to unsecured creditors through the plan.

In affirming the bankruptcy court, the district judge took a different tack from that of the bankruptcy court. The district court applied confirmation order language identical to the language in this case to hold, in effect, that none of the property of the estate vested in the debtors upon confirmation under § 1327(b): "Such property as may revest in the debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account."[45]

*Hoffmeister* notwithstanding, however, this court cannot hold that the trustee's

---

**43.** 191 B.R. 875 (D.Kan.1996).

**44.** *Id.* at 876.

**45.** *Hoffmeister,* 191 B.R. at 878.

form confirmation order language in this case furnishes a proper legal foundation for changing the vesting time expressed in § 1327(b). In *Hoffmeister*, while the district court applied the language of paragraph 8 of the trustee's form confirmation order, no one had questioned the procedural legality of that confirmation order language. Nor was the district court familiar with the genesis of that language in the bankruptcy system as this court is. Therefore, the district court applied the confirmation order language with the assumption that the order had been entered according to procedural due process of law. It assumed that the trustee had obtained authority from the court to include the language in the form order after proper notice and opportunity for hearing to the debtor and interested parties and after the court had ruled that the language could be included in the order. This is not the case here, as pointed out above.

This court's own research reveals that the Hoffmeisters appealed the district court decision to the Tenth Circuit, and in an unpublished opinion, the Circuit Court affirmed the lower court decision.[46] Nevertheless, this court respectfully declines to find that the Tenth Circuit opinion requires a similar result in this case. First, the Tenth Circuit ruling in *Hoffmeister* is not a binding precedent since 10th Cir. R. 36.3(A) provides, "Unpublished orders and judgments of this court are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel."

Second, like the district court, the appellate court had no reason to address the procedural legality of the trustee's form confirmation order language. And the appellate court did not base its decision on the language of the form order, as the district court did, although the appellate court did mention the district court's rationale in a footnote.

Third, the various decisions within the Tenth Circuit discussed above, including the Circuit level decision in *In re Talbot*, which was decided after the *Hoffmeister* appeals, cast a different light on the extent to which § 1306(a) can be viewed as bringing property into a Chapter 13 post-confirmation estate. Also, since the projected disposable income approach championed later in this opinion departs significantly from the approach taken by numerous other courts, these subjects may be sufficiently debatable to warrant further scrutiny at the Circuit level.

The language contained in paragraph 8 of the form order entered in this case will no longer be approved in Chapter 13 confirmation orders issued in cases before this judge, unless the court rules in a properly processed contested matter that such language is appropriate for inclusion in the order.

## H. The Trustee's Disposable Income Contention

The trustee contends that the life insurance proceeds at issue are "disposable income" that the Richardsons must pay through the plan. By this contention, he seems to equate the concept of *"projected disposable income"* with the concept of actual disposable income—the income actually received by the debtors during the plan payment term above living expenses.

According to § 1325(b)(1), as amended in 1984, a plan cannot be confirmed unless it pays objecting unsecured creditors in full; or in the alternative, unless the plan, as of the date of confirmation, "provides that all of the debtor's *projected disposable income* to be received in the three-year

---

**46.** 98 F.3d 1349, 1996 WL 560797 (10th Cir.(Kan.)).

period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."[47]

■ But the trustee has distorted the true meaning of the phrase "projected disposable income" appearing in § 1325(b)(1). Under this section, the words "projected disposable income" have a much different meaning than the meaning the trustee advances. "Disposable income" does not mean actual future income; rather, it is defined in § 1325(b)(2) to mean income remaining after deducting maintenance or support and income from engaging in business, if the debtor is so engaged:

> ... income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor, ... and
>
> (B) if the debtor is *engaged in business*, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.[48]

The phrase "projected disposable income" means that, as of the date of confirmation, the debtor, trustee and the court must project what the debtor's income will be over a three-year period. Then, subsistence and self-employment business expenses, if any, are deducted to reach the "projected disposable income" figure and this amount must be devoted to the plan in order to obtain confirmation. After confirmation, the trustee can expect to receive this projected amount over the next three years, not the actual disposable income received by the debtor, which could be a greater amount.

This interpretation of § 1325 has been adopted by the Ninth Circuit in *Anderson v. Satterlee (In re Anderson)*, a 1994 decision in which the Chapter 13 trustee unsuccessfully maintained that the debtors were required to pay all of their *actual disposable income* during the life of the plan. The court held, however, that the Chapter 13 debtors' obligation under § 1325(b)(1)(B) was to pay their *projected disposable income* over the course of the plan, not their actual income.[49] The debtors' plan proposed to pay $800 per month for 36 months, which would not have paid their creditors in full.

At the § 341 meeting, the trustee presented the debtors with a Best Efforts Certificate, which constituted an agreement by the debtors to pay the trustee their actual disposable income over 36 months. The certificate also provided that the trustee would determine by periodic review of their financial status what the actual disposable income would be; then he would automatically adjust their payments. Because the debtors refused to sign the Certificate, the bankruptcy court refused to confirm their plan.

On appeal to the district court, the debtors maintained, as they had in the lower court, that the $800 per month represented an accurate estimate of their projected disposable income over three years of the plan; therefore, their plan was confirmable. The district court nevertheless affirmed the bankruptcy judge.

On appeal, however, the Ninth Circuit adopted the plain language of § 1325(b)(1)(B) requiring only the " 'payment of all projected disposable income' as calculated at the time of confirma-

---

**47.** § 1325(b)(1)(B) (emphasis added).

**48.** 11 U.S.C. § 1325(b)(2) (emphasis added).

**49.** *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355 (9th Cir.1994).

tion...."[50] And the court endorsed a two-part process for determining this amount that was suggested by the Fifth Circuit in *Matter of Killough*.[51] Under this process, the first step in arriving at projected disposable income is to multiply the debtor's monthly income by 36. The next step is to determine the amount of the debtor's income that is disposable.[52]

The trustee argued that the $800 projection did not assure that the Andersons would pay all actual disposable income during the life of the plan. But the court saw this argument as flawed because the plain language of the statute did not require the payment of actual disposable income. Furthermore, the court found the trustee's effort to force an agreement to a periodic payment adjustment without a court order to be inconsistent with the procedures for modifying a plan after confirmation.

■ Like the *Anderson* court, this court believes that the phrase "projected disposable income" must be given its obvious meaning. Before a plan is confirmed, the debtor, the trustee, and the court must look to see what the plan offers in payments from projected disposable income that will predictably flow to the debtor. If income is foreseeable at confirmation, it is included within projected disposable income. The determination of projected disposable income must be made before confirmation of the plan, not as fortuitous, unforeseen receipts arise during the course of the plan. Contrary to the trustee's view here, the post-confirmation receipt of life insurance benefits as a beneficiary is neither earnings nor other property that was devoted to the plan and therefore not accessible to him for payment to creditors through the plan.

## I. The Chapter 13 Scheme

*In re Adams* and its progeny teach that from the date of the Chapter 13 petition until the date the court confirms a plan, there is no *property of the debtor;* there is only *property of the estate.* Property of the estate includes the property defined by § 541, plus earnings, income from engaging in business, and other property the debtor acquires between the date of the petition and the date of confirmation.

A debtor must provide in the plan "for the submission of that part of projected disposable income to the supervision and control of the trustee as is necessary for the execution of the plan."[53] But the debtor may also voluntarily assign to the plan tangible property of the estate. This may sometimes be necessary, but not mandatory, in order to meet the best-interest-of-creditors test. The debtor may choose whether to include the tangible property in the plan or not, albeit failure to do so may result in denial of confirmation.

■ When the court confirms a Chapter 13 plan, § 1327(b) vests the debtor with the property of the estate that is not devoted to the plan. With this vesting, the property becomes *property of the debtor* and no longer *property of the estate.* Those persons who become post-confirmation creditors of the debtor or who hold unstayed, nondischargeable prepetition causes of action against the debtor can collect their claims in state court from the property of the debtor.

50. *Anderson,* 21 F.3d at 358.

51. *Id.* at 357, citing *Matter of Killough,* 900 F.2d 61 (5th Cir.1990) (per curiam).

52. *Anderson,* 21 F.3d at 357, citing *Killough,* 900 F.2d at 64.

53. 11 U.S.C. § 1322(a)(1).

Prepetition creditors, on the other hand, cannot satisfy their claims from property of the debtor. They are entitled only to the debtor's projected disposable income paid according to the plan. Confirmation of the plan is the court's approval of a new contract with the debtor's prepetition creditors limiting them to recovery of the remaining property of the estate—the debtor's projected disposable income designated by the plan for payment to prepetition creditors and any tangible property committed to the plan.

The debtor's obligation is to pay that projected disposable income to the trustee for distribution according to the terms of the plan. The debtor remains in possession of the income, however, until it is paid to the trustee for payment on claims as the plan dictates.[54] When the debtor completes paying the projected disposable income, the plan obligation is satisfied and the debtor is due a mandatory discharge.[55]

The role of the standing Chapter 13 trustee is merely to receive the projected disposable income and to disburse it to prepetition allowed claims according to the terms of the plan. The Code does not otherwise authorize the standing Chapter 13 trustee to collect, liquidate, or distribute property as it does a Chapter 7 trustee. Furthermore, if a debtor is delinquent in paying the projected disposable income, the trustee's remedy as the receiving agent of this income is to seek dismissal of the case, not to act as a collection agent for the creditors.

If after plan confirmation, a debtor receives a windfall sufficient to pay the projected disposable income, but fails to do so, the trustee should move to dismiss the case, not try to pursue the windfall. Dismissal will deny the debtor a discharge and allow his or her creditors freedom to collect their full claims from the windfall under state law.

In addition to the form confirmation order, the trustee in this case has generated a form plan that many debtors' counsel often use. The language of the form plan in this case, at least, states, "All plans must run a minimum of 36 months or pay all creditors filing claims 100%."[56] This statement distorts § 1325(b)(1)(A) and (B). Certainly, if a creditor objects to a Chapter 13 plan, the plan cannot be confirmed if it does not pay the creditor's allowed claim in full or if the debtor does not propose to pay into the plan three years' worth of his or her projected disposable income. But the statute does not say that this payment *must* be made over a 36-month period. All it says is that the debtor's projected disposable income, i.e., his income projected over that time period less his living expenses, must be paid. Nothing in the Code says this payment could not be made the day after confirmation if the debtor were lucky enough to receive a windfall sufficient to allow payment in advance, so long as the windfall came to the debtor from some outside, independent source, not property over which the debtor had control before filing. Thus, under the projected disposable income approach, in contrast to the actual income approach, the 36 months of projected income pledged to the plan can be paid before the expiration of the 36-month period.

If after obtaining confirmation of a plan, a debtor receives a windfall and

---

54. § 1306(b).

55. § 1328(a).

56. Chapter 13 Plan filed June 6, 1997 (Doc. # 2), at 2.

proposes to pay the total projected disposable income before the end of the plan term, the trustee should accept the money, distribute it according to the plan, and grant the debtor a discharge. Confirmation is the court's approval of a contract, in effect, between the debtor and the creditors. The debtor pledges his or her projected disposable income and the Code gives that money to the creditors, even though that amount may not pay their claims in full. This is the statutory allowance that all the prepetition creditors are entitled to receive under the Code. The focus must be on this confirmed statutory contract. There is nothing in the Code that says the debtor must suffer through three years of paying projected disposable income if good fortune would allow him or her to make an earlier payoff. The object of the Code provision is not to force the debtor to make payments over a period of time; the object is to give creditors some recovery on their claims, even though it may not be full recovery. Allowing a payoff accomplishes this purpose.

But, the Code does not say there should then be a denial of discharge because of the debtor's good fortune. The law's original intent was that the debtor would pay creditors from projected disposable income and be allowed to retain other property. If this approach to a windfall is thought by some as unfair to creditors or as insufficiently punitive to the debtor, let Congress provide the remedy that it has so far not provided.

## J. The Result in This Case

 In § 1306(a), the Chapter 13 estate is said to include "property specified in § 541." Subsection (a)(5)(C) of § 541 includes within property of the estate a beneficiary's interest in a life insurance policy if the interest is acquired within 180 days after the petition date. Since the Richardsons acquired their interest in the insurance proceeds well after 180 days after the petition date, however, § 541(a)(5)(C) did not bring those benefits into the Chapter 13 estate.

Before confirmation, the Richardsons' Chapter 13 estate consisted of three components: (1) their interest in property held at the date of the filing of the petition; [57] (2) their interest in property acquired between the date of filing the petition and the date of confirmation; [58] and (3) their interest in projected disposable income from earnings and income from engaging in business. [59] The Richardsons' plan did not provide that either of the first two components be paid to creditors. Rather, it pledged the third component, the Richardsons' projected disposable income of $1,800 per month times 36 months, a total of $64,800. Consequently, upon confirmation, all estate property except the projected disposable income necessary to fulfill the plan was vested in the Richardsons and became property of the debtors.

But what of the insurance proceeds? Their receipt after confirmation makes this case factually different from all of the other cases discussed in this opinion. In the cases cited, the property vested in the debtor by § 1327(b) was property of the estate from the commencement of the case. In *Frausto*, for example, although the $100,000 recovery did not come into the trustee's possession until after confirmation, it was indeed the product of a prepetition cause of action that was in existence, albeit contingent and unliquidat-

---

**57.** 11 U.S.C. § 541(a).

**58.** *In re Adams,* 12 B.R. 540 (Bankr.D.Utah 1981).

**59.** 11 U.S.C. § 1306(a).

ed, on the date of the petition. Therefore, it was property of the estate that confirmation vested in the debtor.

But the insurance proceeds in this case were not property of the estate at the time the Richardsons' plan was confirmed. The Richardsons did not acquire the insurance proceeds until well after confirmation. This fact anticipates the argument that § 1306(a)(1) remains operative to bring the insurance proceeds into the estate. The proceeds were, after all, acquired by the Richardsons before the case was closed, dismissed, or converted, albeit after confirmation.

But in this court's view, that argument lacks merit. It makes no sense to hold that § 1306(a)(1) brings the insurance proceeds into the Chapter 13 estate after confirmation when property that was in the estate at confirmation vests in the debtors and leaves the estate. In this court's view, § 1327(b) negates the language of § 1306(a)(1) that would otherwise bring into the estate post-confirmation property acquired by the debtors before the closing, dismissal, or conversion of the case.

■ The court therefore rules that the insurance funds are not property of the estate; they are property of the debtors available only to satisfy the claims of the Richardsons' postpetition creditors. Property acquired by the debtors after confirmation, like property vested in them upon confirmation, is *property of the debtors.*

### K. The Trustee's Inability to Modify

■ Although the trustee has no power to collect or liquidate property, § 1329 allows him to seek modification of a plan: "At any time after confirmation of the plan but *before the completion of payments un-*

*der such plan,* the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim. . . ." [60] Since the debtors have completed their plan payments in this case, the trustee can no longer obtain modification of the plan to effect the result he desires.

### L. The Debtors' Entitlement to Discharge

The plan calls for monthly payments of $1,800 for 36 months. This totals $64,800, which amount constitutes the Chapter 13 estate available for plan creditors. In their motion for discharge, the Richardsons maintained that they had completed the payments according to the plan terms.[61] In the motion, they reviewed the status of their 36-month plan payments and noted that an additional payment of $3,519.02 would complete their payments and entitle them to a discharge under § 1328(a).

This is correct since the trustee's records in the file, of which the court takes judicial notice, show that he received a $3,519.02 payment on September 5, 1997. Additionally, the records show that with this payment, the Richardsons exceeded their $64,800 plan obligation by $400.

The Richardsons have paid their plan obligation and therefore would be entitled to a discharge under § 1328(a), unless the trustee's misrepresentation and bad faith objection would require otherwise, which seems unlikely since the conduct complained of appears to have occurred post-confirmation. If the conduct occurred post-confirmation, by the theory of this opinion it would not prevent discharge.

### IV. Conclusion

The Richardsons' Motion for Partial Summary Judgment is granted since the

---

**60.** 11 U.S.C. § 1329(a) (emphasis added).

**61.** Debtors' Motion for Discharge filed August 30, 2000 (Doc. # 47), at 6.

insurance proceeds, although not exempt property, are not property of the estate. The trustee's objection to discharge is denied insofar as it contends that the insurance proceeds are estate property or projected disposable income. And the trustee has no power to retrieve the insurance monies and is not now entitled to modify the plan.

A judgment reflecting this ruling will be entered on a separate document in compliance with Fed. R. Bankr.P. 9021 and Fed. R.Civ.P. 58.

IT IS SO ORDERED.